No. 102,835

STATE OF KANSAS, *Appellee*, v. RASHAWN T. ANDERSON,
*Appellant*.
(249 P.3d 425)

Opinion filed March 18, 2011.

*Gerald E. Wells*, of Lawrence, was on the brief for appellant.

*Chadwick J. Taylor*, district attorney, *Darren E. Root*, assistant district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Rashawn T. Anderson directly appeals from the denial of his pre-sentence motion to withdraw his no contest plea for first-degree murder. The district court found Anderson had not established good cause to support his motion. Anderson argues the district court erred because his attorney admitted in court that he did not explain to Anderson the meaning of the plea agreement's recommended concurrent sentence and misled Anderson about the

possible prison term. But the attorney recanted these statements under oath in a later proceeding. This left it to the district court to determine which statements were credible.

We affirm because we find the district court did not abuse its discretion by resolving those credibility determinations against Anderson and denying his motion to withdraw his plea.

## FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Anderson of first-degree premeditated murder and criminal possession of a firearm for the July 18, 2005, killing of McCoy Caraway in Shawnee County. While this prosecution was pending, a jury convicted Anderson of second-degree murder and aggravated battery in Douglas County for an unrelated matter. Anderson was sentenced to a total of 187 months' imprisonment (15 years, 7 months) for the Douglas County convictions, which Anderson is also appealing. See *State v. Anderson*, No. 99,123, unpublished opinion filed March 20, 2009 (Kan. App.), *rev. granted* 290 Kan. 1095 (2010) (review pending).

In the Shawnee County case at issue here, Anderson was represented by Steven Rosel, who negotiated a plea agreement. Under a written agreement signed by Anderson, he pleaded no contest to first-degree murder in exchange for dismissal of the criminal possession of a firearm charge and a joint sentencing recommendation that Anderson's sentence run concurrent to the Douglas County sentence. First-degree murder is an off-grid felony. K.S.A. 21-3401. Anderson's presumptive sentence for this offense required a mandatory minimum of 25 years' imprisonment served before becoming eligible for parole. K.S.A. 22-3717(b)(1). The plea agreement did not recommend a departure sentence.

At the plea hearing, the Shawnee County District Court explained to Anderson that the agreement recommended a concurrent sentence and the first-degree murder conviction carried a life sentence with a mandatory minimum of 25 years. But the district court did not specifically explain that Anderson's sentence would extend almost 10 years beyond the concurrent Douglas County sentence because the mandatory minimum for first-degree murder carried the longer mandatory sentence (hard 25 life). Anderson

testified at the plea hearing that he understood the agreement's provisions and the possible sentence. But immediately before entering his plea, Anderson conferred with his attorney off-record. Then, Rosel indicated Anderson was ready to proceed. Anderson pleaded no contest.

A few weeks later, but before sentencing, Rosel filed a one sentence motion to withdraw Anderson's plea. No grounds were stated to support withdrawal. Rosel would later testify he did not know Anderson's reasons for wanting to withdraw his plea at the time the motion was filed.

It is worth noting that Rosel continued to represent Anderson at the first hearing on the motion to withdraw plea. This resulted in Rosel appearing on behalf of Anderson at a hearing in which Anderson and Rosel would discuss whether Rosel sufficiently informed Anderson of his rights before the plea was entered.

At this first hearing on the motion to withdraw Anderson's plea, none of the discussion occurred under oath. Anderson alleged Rosel told him during the plea negotiations that Anderson could plead no contest to attempted murder and not serve additional time for the first-degree murder conviction. But, Anderson continued, when the written plea agreement was presented those terms had changed. Anderson claimed further that he asked Rosel during the plea hearing why the court had said the presumptive sentence carried a mandatory minimum of 25 years and Rosel told him not to worry about it. Anderson also said he was assured by Rosel that he would only serve the "15-year sentence" he was already serving in the Douglas County case.

For his part, Rosel admitted that he talked to Anderson and his family about amending the charge to attempted murder. Rosel also said he understood why Anderson believed he would not serve any more time than he had already received in the Douglas County case. Rosel then stated that "somewhere in there my advice to him was inaccurate, in that he would not receive any more time than fifteen years." Rosel could not say "clearly and conclusively" that he did not mislead Anderson.

In response to Anderson's claim that Rosel privately contradicted the court's explanation of the sentence in the off-record

conversation at the plea hearing, the court asked Rosel if that was how he remembered the discussion. The following exchange ensued:

"Mr. Rosel: I believed—I believe that—I believe that he's accurate. I believe what he's told you. I believe he's accurate. I believe at the time that I misled him in that concurrent, maybe I wasn't clear enough in that concurrent. I knew what concurrent was; fifteen years of it was going to be concurrent.

"THE COURT: Well, but what he said is that you told him, 'You won't get any more time than what you got in Lawrence.' That's different from concurrent. I mean you can serve—

"Mr. Rosel: I believe that I did tell him that.

"THE COURT: That he would only get fifteen years?

"Mr. Rosel: That he wouldn't get any more time than in Lawrence, I believe th[o]se were my words, yeah."

But after that exchange Rosel questioned his own recollections, saying he really was not certain by stating, "I mean Mr. Anderson indicates that's what his recollection is; mine is—mine is—I'm not sure. I don't know."

Since none of these facts were alleged in the motion to withdraw, the State was unprepared to address them. The court scheduled an evidentiary hearing. The court appointed a new attorney to represent Anderson. At that evidentiary hearing, Anderson, his father, his uncle, and Rosel were witnesses.

Anderson testified he told Rosel during their first meeting that he wanted a jury trial and Rosel agreed with this because he believed the State had a weak case. Anderson also claimed that Rosel did not discuss any of Anderson's possible trial defenses with him during the three or four times they met. Anderson said further that he and Rosel discussed a plea deal 2 or 3 weeks before trial. Later, Anderson continued, Rosel confirmed to him that the State agreed to amend the charges to attempted murder, so the sentence would run concurrently with his sentence in the Douglas County case—meaning Anderson would not serve additional time.

Anderson also testified that the day he signed the plea agreement he only skimmed it and did not realize he was pleading to first-degree murder rather than the previously discussed attempted murder charge. Anderson said he asked Rosel whether he would receive the agreed to "15-year sentence" and Rosel assured him

he would. Regarding the off-record discussion Anderson and Rosel had at the plea hearing, Anderson testified he asked Rosel about the charge and sentence and Rosel told him not to worry about it. Finally, Anderson testified he would have gone to trial if he understood that he would serve additional time for the Shawnee County conviction.

Anderson's father said his understanding was that Rosel was trying to get the first-degree murder charge lowered to attempted murder, which would reduce Anderson's sentence so he would not serve more than the 15 years, 7 months already ordered in the Douglas County case. The father also said Rosel assured him both before and after the plea hearing that Anderson would not receive additional time, even though the judge stated the plea would carry a presumed life sentence with a mandatory minimum of 25 years. Finally, the father testified he spoke to Rosel after the first hearing on Anderson's motion to withdraw and Rosel said he would not tell the court under oath that he misled Anderson. Anderson's uncle provided similar testimony, saying that Rosel told him the State would amend Anderson's charge so the sentences would run concurrently and Anderson would not serve additional prison time.

In Rosel's testimony, the State asked him if Anderson understood the plea agreement before he signed it. Rosel testified they read it together. He also recalled that Anderson said he thought he was going to plead to attempted murder, but Rosel told him the State rejected the offer to reduce the charge to attempted murder. Rosel then testified he believed Anderson "understood the consequences of entering the plea to first-degree premeditated murder." Rosel further testified he told Anderson before the no contest plea hearing that the plea agreement could result in an additional 10-year prison sentence beyond the Douglas County sentence.

The only time Rosel was questioned about his prior contradictory comments at the first hearing was when the State asked him what he and Anderson discussed off the record during the plea hearing. Rosel testified Anderson asked whether his sentence would still run concurrent with the sentence in the Douglas County case. Rosel said he told Anderson that was still the recommended

sentence pursuant to the plea agreement. Rosel also said he believed Anderson changed his mind about the plea when Anderson's family intervened. Finally, Rosel testified that he did not mislead, coerce, mistreat, or take advantage of Anderson.

Both parties submitted written briefs after the evidentiary hearing on whether Anderson should be allowed to withdraw his plea. Relevant to this appeal, Anderson argued good cause was shown because Rosel misled him into believing he would plead to an amended charge of attempted murder and that he would receive a sentence concurrent to the "15-year sentence" ordered in the Douglas County case. Anderson also claimed the plea was not fairly and understandingly made because Rosel gave him conflicting and misleading advice during the plea hearing, citing his allegations that Rosel told him not to worry about the court's statement that the charge carried a mandatory minimum term of 25 years. The State argued Anderson had not established good cause to withdraw his plea, citing Rosel's testimony at the evidentiary hearing in which he recanted his earlier statements. The State also argued the district court's inquiry at the plea hearing cured any confusion Anderson claimed he had because of his attorney's representations.

The district court denied Anderson's motion to withdraw his plea, making the following factual findings pertinent to the issue on appeal:

"11. The evidence indicates Rosel may have been less than candid with Anderson's father, mother, and uncle. However, none of those people were Rosel's clients.

"12. The evidence does indicate Rosel did keep Anderson apprised of the ongoing plea negotiations and that Anderson understood them. To the extent Anderson now claims he did not understand the terms of the written plea agreement, or that he did not assent to those terms, such claims are rejected by the Court as unreliable, and therefore, false.

. . . .

"14. Initially, there was some concern in the Court's mind that Rosel contradicted the Court's statements for conviction of Murder in the First Degree. However, Rosel testified at the hearing on December 2, 2008, that he did not contradict the Court at the plea hearing and that Anderson had been advised of the possible sentence before the plea hearing. Finally, Rosel testified that his own statements to Anderson concerning the possible sentence were consistent with the statements made by the Court to Anderson at the Plea hearing. The Court is satisfied that Anderson understood the potential sentence for Murder in the First Degree, the

crime of conviction in this case, before Anderson's plea of 'No Contest' was accepted by the Court."

The district court then held Anderson failed to establish good cause to withdraw his plea because: (1) Rosel was competent, and there was no credible evidence that his performance in representing Anderson fell below an objective standard of reasonableness; (2) the plea agreement benefitted Anderson because it reduced his mandated sentences he would have received for both convictions from over 40 years to 25 years; (3) Anderson was not misled, coerced, mistreated, or taken advantage of; (4) the plea was fairly and understandingly made; and (5) Anderson was aware of the consequences of the plea.

Anderson filed a timely notice of appeal. This court has jurisdiction under K.S.A. 22-3601(b)(1) (direct appeal for off-grid crime; life sentence).

## ANALYSIS

The issues presented require us to review the district court's factual findings, as well as the district court's decision to deny Anderson's motion to withdraw his plea. A district court's factual findings are reviewed for substantial competent evidence. *State v. Gonzalez*, 290 Kan. 747, 756, 234 P.3d 1 (2010). Appellate courts review a district court's decision in a presentence motion to withdraw a plea for abuse of discretion. See *State v. Williams*, 290 Kan. 1050, 1053, 236 P.3d 512 (2010); K.S.A. 22-3210(d). But the district court's decision must be based upon a correct understanding of the law to receive the full measure of the abuse of discretion standard. Anderson bears the burden of establishing an abuse of discretion. See 290 Kan. at 1053. Appellate courts will not reverse a district court's order under an abuse of discretion standard unless no reasonable person would agree with the trial court's decision. *State v. Ernesti*, 291 Kan. 54, 65, 239 P.3d 40 (2010). Appellate courts do not reweigh the evidence or assess witness credibility. Instead, appellate courts give deference to the trial court's findings of fact. *State v. Appleby*, 289 Kan. 1017, 1038, 221 P.3d 525 (2009).

Before sentencing, a defendant must establish good cause for a plea withdrawal. K.S.A. 22-3210(d). District courts consider three

factors when determining if a defendant demonstrates good cause: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Williams*, 290 Kan. at 1053. But all three factors need not apply in a defendant's favor. The district court also may consider other factors when determining whether good cause is shown. 290 Kan. at 1054 (citing *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 [2010]). Anderson argues all three factors have been satisfied, but his arguments are almost indistinguishable as to each.

First, Anderson claims Rosel failed to adequately explain what was meant for the sentence in this case to run concurrent to the Douglas County sentence. The failure to do so, Anderson argues, amounts to incompetent representation, misleading advice, and resulted in Anderson entering a plea that was not understandingly made. There is some support in the record for Anderson's argument. At the initial hearing on the motion, Rosel stated he may have misinformed Anderson he would not need to serve any additional time for the conviction in this case. He added that he could not conclusively say he did not mislead Anderson. Rosel said further that he may have told Anderson he would only get a concurrent "15-year sentence" under the plea agreement. But Rosel later recanted those statements under oath at the evidentiary hearing. There, Rosel testified he reviewed the plea agreement with Anderson before he signed it, explained that Anderson could receive an additional 10 years if he pleaded no contest to first-degree murder, and thought Anderson understood the consequences of this plea. Rosel's testimony is problematic when compared to his dialogue with the district court at the first hearing on the motion to withdraw plea because only one version can be true. Resolution of this issue turns on a credibility determination.

In this case, the same district court judge presided over all proceedings and was in a better position to determine credibility. In the end, the district court believed Rosel's testimony at the evidentiary hearing. The district court found Rosel apprised Anderson of the plea negotiations and that Anderson understood them. The

court also discredited Anderson's testimony that he did not understand or agree to the terms of his plea as unreliable and false. And regarding the off-record discussion Rosel and Anderson had during the plea hearing before entering the plea, the district court held Rosel did not contradict the court's statements to Anderson about the possible sentence that could result from the plea. Therefore, while the record might support a contrary finding, the district court's factual findings are supported by substantial competent evidence.

Next, Anderson argues Rosel was incompetent in light of his family's testimony that Rosel told them the State had reduced the charges to attempted murder and Anderson would not serve any additional time. The district court lends some credence to this claim by holding that Rosel "may have been less than candid" with the family. But the district court also noted this was irrelevant to the issue at hand, which was whether Rosel's representation of Anderson was competent.

On appeal, Anderson admits Rosel did not owe his family a duty to be candid. But Anderson argues the family's testimony demonstrates Anderson did not understand the plea agreement's implications and is further evidence of Rosel's incompetence. The problem with this argument is that Anderson did not testify that he relied upon his family's statements when entering the plea agreement. Furthermore, the argument contradicts the district court's finding that Anderson understood the plea agreement's terms.

Next, Anderson claims his young age and limited education made him dependent upon Rosel to accurately advise him about the ramifications of entering into the plea agreement. Anderson contends the district court's inquiry and explanation did not remedy his confusion because Rosel told him not to worry about it immediately before he entered his plea. He also argues these errors are evidence the plea was not understandingly made and that he was misled. But this argument requires another credibility determination because there is no record of Rosel's discussion with Anderson before Anderson pleaded no contest. As to this point, the district court acknowledged that it was initially concerned Rosel

had contradicted the court's statements, but then Rosel later testified otherwise and the court was satisfied with Rosel's explanation. This credibility determination was bolstered by Anderson's plea hearing testimony when he stated he understood the written agreement's provisions and that there was nothing about the possible sentence he did not understand or want clarified.

Finally, Anderson's appellate brief makes one vague reference to Rosel's "questionable decisions and lack of diligence," as outlined in his posthearing trial brief. We need not address that claim further. An issue not briefed or raised incidentally but not argued is deemed abandoned. *State v. Plotner*, 290 Kan. 774, 777, 235 P.3d 417 (2010).

Ultimately, the district court determined Anderson's testimony was not credible. It found Rosel's testimony from the evidentiary hearing more believable. The district court did not abuse its discretion in finding good cause was not shown and denying Anderson's motion to withdraw his plea.

Affirmed.