NOT DESIGNATED FOR PUBLICATION

No. 114,528

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDUARDO DELAPAZ-ONOFRE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed July 29, 2016. Affirmed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and WALKER, S.J.

*Per Curiam*:  After entering a guilty plea to two felony offenses and before sentencing, Eduardo Delapaz-Onofre sought to withdraw his plea. He claimed that he misunderstood the consequences of the plea, that he thought the charges were misdemeanors, and that his attorney misled him. After hearing testimony from Delapaz-Onofre and his attorney, the district court denied the motion to withdraw the plea. Because we find that the district court did not abuse its discretion in determining that good cause did not exist to allow Delapaz-Onofre to withdraw his plea, we affirm.

1

After he shot at an occupied residence in July 2014, the State charged Delapaz-Onofre with a single count of criminal discharge of a firearm at a structure or vehicle, a felony. Later, the State amended the complaint to include an additional count of felony-level criminal discharge and a single count of misdemeanor-level criminal discharge. Although Delapaz-Onofre originally intended to go to trial, he later agreed to plead guilty to the two felony-level offenses. In return, the State dismissed the misdemeanor charge.

At the plea hearing, the district court (through an interpreter) questioned Delapaz-Onofre both about his waiver of preliminary hearing and his decision to plead guilty. Delapaz-Onofre repeatedly expressed that he understood the rights he was waiving. In terms of the actual decision to enter a plea, Delapaz-Onofre said that he felt satisfied with his lawyer's services, was not under the influence of any substances, and understood the consequences of the agreement, possible sentences included.

The State provided the factual basis for Delapaz-Onofre's plea. But after Delapaz-Onofre agreed to the accuracy of these facts, the following exchange occurred:

> "THE COURT:  Are you pleading guilty because you are, in fact, guilty?
> "THE DEFENDANT:  Yes. I don't know if I can talk to the Judge about this or not right now.
> "THE COURT:  You can. You'll have a chance at sentencing too. Today is about—
> "THE DEFENDANT:  Yes, I understand.
> "THE COURT:  Is there anything else you wanted to say or add to the facts?
> "THE DEFENDANT:  No. I just want this to end because I want to be home with my family."

However, when the district court pressed Delapaz-Onofre on whether he understood that he "may go to prison," he said he understood. The district court ultimately accepted his plea as freely and voluntarily made and convicted him of the two offenses.

When the parties returned to court for sentencing, however, Delapaz-Onofre said that he did "not agree with the plea," claiming that his attorney rejected his theory of defense, never explained the amended complaint, and led him to believe he would receive a better sentence by pleading guilty. The district court construed Delapaz-Onofre's comments as a motion to withdraw his plea and continued the case for appointment of new counsel. At the subsequent hearing, Delapaz-Onofre testified that he believed that he was pleading to misdemeanors and felt confused when the State added the two other charges. According to Delapaz-Onofre, these things were not fully explained to him. He also claimed that while he wanted to go to trial, his attorney pressured him into pleading guilty. And when Delapaz-Onofre asked his attorney for the evidence against him, the attorney failed to provide that information until the day he successfully pressured Delapaz-Onofre into pleading.

As for the plea agreement itself, Delapaz-Onofre testified that he never read the agreement because his attorney urged him to sign it, claiming that it was "'exactly what we talked about the last time we were here.'" When they arrived at the hearing, Delapaz-Onofre felt confused, but his attorney responded to this uncertainty by again urging him to plead guilty.

Delapaz-Onofre's attorney, however, had a very different recollection. For one, he testified that he provided Delapaz-Onofre with all the relevant documents he had received in discovery. In terms of the additional charges, the attorney stated that he fully explained them to Delapaz-Onofre, outlining how including those offenses in the original case would ultimately help him. The attorney explained that he walked Delapaz-Onofre

through all of the possible consequences of his plea and the high likelihood that, due to a special sentencing rule, Delapaz-Onofre would face prison time.

When asked whether he believed that Delapaz-Onofre understood the proceedings, the attorney replied, "Yes. He speaks pretty good English. I've had conversations with him with and without an interpreter. . . . [W]e went over the facts of the case and the options." And at the plea hearing, the attorney felt that Delapaz-Onofre understood the proceedings.

All that said, the attorney could not remember exactly when he discussed particular issues with Delapaz-Onofre. But in terms of Delapaz-Onofre's hesitation at the plea hearing, he explained, "I think he didn't want the Judge to believe that this was just him randomly shooting at a house, that there was an issue going on in the car." Because he believed that Delapaz-Onofre just wanted to contextualize the shooting, he assured Delapaz-Onofre that the hearing "was just going to decide whether he understood the plea" and not touch on sentencing issues.

Although Delapaz-Onofre argued that he did not fully understand what he was pleading to, the district court denied his motion. Specifically, the district court determined that Delapaz-Onofre understood the interpreter, the rights he was waiving, and the consequences of his plea. Notably, the district court found that the claim that he thought he was pleading to misdemeanors was "not in the record whatsoever."

The district court ultimately sentenced Delapaz-Onofre to a total of 22 months' imprisonment, and he timely appealed.

ANALYSIS

In his sole issue on appeal, Delapaz-Onofre again contends that his attorney misled him when counseling him to accept the plea and that he never understood the consequences of the agreement. Our Kansas statutes allow a guilty plea to be withdrawn before sentencing for good cause. K.S.A. 2015 Supp. 22-3210(d)(1). When considering whether good cause exists, the district court generally considers three factors: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. But importantly, these factors should not be applied mechanically or to the exclusion of others. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

When appealing this issue, the defendant must establish that the trial court abused its discretion in denying his or her presentence motion to withdraw a plea. *State v. Kenney*, 299 Kan. 389, 393, 323 P.3d 1288 (2014). A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Delapaz-Onofre focuses his argument on his alleged lack of understanding, insisting that his statement to the judge during the plea hearing clearly demonstrates his confusion. In order for a court to consider a plea informed, the defendant must understand "the relevant circumstances and likely consequences of the plea." *Wilkinson v. State*, 40 Kan. App. 2d 741, 744, 195 P.3d 278 (2008), *rev. denied* 289 Kan. 1286 (2009). But despite Delapaz-Onofre's claims to the contrary, nothing in the record suggests that he did not understand the agreement or its consequences. In fact, when Delapaz-Onofre stated that he "want[ed] to be home with [his] family," the district court paused to ensure that he understood that pleading guilty might result in prison time. And for the second time during that hearing, Delapaz-Onofre assured the district court that he did.

5

Even more strikingly—and again, contrary to Delapaz-Onofre's position—the district court repeatedly referred to the charges at issue in this case as felonies. From the point where Delapaz-Onofre waived his right to a preliminary hearing on the second count to the time of his conviction, the district court described the offenses as felonies at least three times. Moreover, when reviewing the potential sentences for each offense, the district court accurately referred to each as "a severity level 7 person felony." Delapaz-Onofre never expressed any confusion about the classification of these crimes. In other words, and as the district court observed at the motion hearing, nothing in the record supports Delapaz-Onofre's claim that he thought he was pleading to misdemeanor charges.

As for his attorney misleading him into accepting the plea, Delapaz-Onofre stated at the plea hearing that he discussed the plea agreement with his lawyer and felt satisfied with his services. The attorney himself testified at the motion hearing that he provided Delapaz-Onofre all the relevant discovery and talked to him about all the issues surrounding his plea, including the two additional charges. And while the attorney could not remember every detail surrounding these discussions, he testified about very specific aspects of Delapaz-Onofre's case, such as the need to add the new charges to the existing complaint and the special sentencing rule affecting his potential for probation.

In the end, the motion hearing required the district court to determine who was more credible: Delapaz-Onofre or his attorney. And after hearing all testimony, the district court judge decided that question against Delapaz-Onofre. As the same judge presided over all the hearings, she was in the best position to make this determination. See *State v. Anderson*, 291 Kan. 849, 856, 249 P.3d 425 (2011) ("In this case, the same district court judge presided over all proceedings and was in a better position to determine credibility."). The district court did not abuse its discretion by rejecting Delapaz-Onofre's claims and denying his motion. Accordingly, the decision of the district court is affirmed.

6

Affirmed.