NOT DESIGNATED FOR PUBLICATION

No. 116,282

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY LAWSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed October 13, 2017. Affirmed in part and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant, and *Anthony Lawson*, appellant pro se.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., PIERRON and GREEN, JJ.


PER CURIAM: After pleading no contest to robbery, Anthony Lawson moved to withdraw his plea before sentencing. His motion was later denied. Lawson now appeals the denial of his motion to withdraw plea as well as his sentence for that conviction. Lawson first argues that the trial court erred when it denied his motion to withdraw plea because he did not understand the meaning of concurrent sentences as used in his plea agreement. Lawson next argues that there was a clerical error in calculating his jail credit. Last, Lawson argues that the trial court violated his Sixth and Fourteenth Amendment

1

rights as explained in *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used his criminal history to enhance the length of his sentence. Of these arguments, we find only the clerical error in calculating his jail credit to be persuasive. Accordingly, we affirm in part and remand to the trial court with instructions to correct the clerical error in calculating the jail credit.

Lawson was charged with aggravated robbery in Wyandotte County case No. 07 CR 1124 and aggravated robbery, kidnapping, and robbery in Johnson County case No. 08 CR 2464. After serving 7 years of his 14-year prison sentence for his Wyandotte County 07 CR 1124 case, Lawson entered into a plea agreement for his Johnson County 08 CR 2464 case. Under the plea agreement, in return for Lawson's no contest plea to one count of robbery, as opposed to aggravated robbery, the State agreed to the following actions: (1) it would dismiss the kidnapping charge; (2) it would recommend that the trial court impose the mid-box grid sentence for the robbery; and (3) it would recommend that the trial court run the robbery sentence concurrent to his aggravated robbery sentence in his Wyandotte County case.

At the beginning of Lawson's plea hearing Lawson's counsel, Zane Todd, told the trial court that Lawson and the State had reached a plea agreement. The trial court noted that Lawson had moved pro se to remove Todd as his counsel a few weeks prior to the plea hearing. In that motion, Lawson had specifically complained that Todd had failed to provide him with an "acceptable, equitable plea agreement." After noting that Lawson had previously requested new counsel, the trial court asked Lawson if it was now his wish to withdraw his new counsel motion. Lawson responded, "Yes."

The trial court then began the plea colloquy. The trial court told Lawson about the rights he would have during trial, including the rights to be proven guilty beyond a reasonable doubt, to cross-examine witnesses, to subpoena and call his own witnesses, to not testify, and to appeal any conviction and sentence resulting from his trial. Lawson

2

stated that he understood that he had those rights and that he would be waiving those rights by entering a no contest plea. Upon further questioning from the trial court, Lawson told the trial court that he had been given enough time with Todd to discuss his plea agreement, he was happy with Todd's services, he was not under the influence of mind-altering drugs, and he had not been threatened to enter the plea agreement. The trial court then told Lawson that it was not bound by the terms of the plea agreement. It told Lawson that because robbery was a severity level 5 person felony, he could serve anywhere from a 31- to 136-month prison sentence. When asked by the trial court if he understood this, Lawson responded affirmatively. Then, the trial court accepted Lawson's no contest plea.

At Lawson's scheduled sentencing, Lawson told the trial court that he had not understood certain terms of his plea agreement. He also requested new counsel. The trial court granted Lawson's request for new counsel. Lawson's new counsel moved to withdraw Lawson's plea. He argued that Lawson was entitled to withdraw his plea because the trial court failed to inform him about postrelease supervision. Lawson additionally moved pro se to withdraw his plea. In his motion, he asserted the following:

> "[Mr. Todd] was very much aware that [I] believed that when the plea was offered[,] [I] was under the impression that since the offense happened back in 2007[,] it was to run concurrent with the Wyandotte sentence[,] which also occurred in 2007. . . .
> "[I] also state[*sic*] that Mr. Todd even ask[ed] [me] about the special rules clause to make sure [I] would not fall under [them], with Mr. Todd stating 'we don't want to be signing your life away for 10 years[,]' which was the amount of time on the sentence if it would [have] start[ed] . . . November 5th, 2014. With that statement [I] believe[d] that [my sentence] was to start from the date of the offense."

At Lawson's evidentiary hearing, both Lawson and Todd testified. Lawson testified that Todd misinformed him on the meaning of "concurrent sentences" as used in his plea agreement; he specifically testified that Todd misled him on what it meant for his

robbery sentence to run concurrent with his Wyandotte County sentence based upon Todd's explanation of the special rules. As he did in his pro se motion to withdraw plea, Lawson asserted that Todd's comment about the special rules and "signing your life away for 10 years" supported that he told him concurrent meant that his robbery sentence would start "the time that the case was filed." He testified that he learned that he was mistaken in his understanding the day he was supposed to be sentenced.

On cross-examination, Lawson admitted that Todd never said "anything about [his sentence] running from 2008." Lawson admitted that he understood that the trial court was not bound to follow the terms of his plea agreement. He also admitted that regardless of his robbery sentence, which carried a presumptive 24-month term of postrelease supervision, he knew that he would be serving 36 months' postrelease supervision upon the completion of his Wyandotte County sentence.

Todd testified that although he could not remember some details concerning Lawson's plea agreement, he remembered going over the fact that Lawson's robbery sentence would run concurrent to his Wyandotte County sentence, explaining:

> "We even talked—we talked in court and then I think over the video about how much time he had left on there, because that was really an issue of how helpful it was. If it was concurrent with a case that was, you know, he had two weeks to do, left on it, then it wasn't very helpful. So I think we did a calculation on—he was going to have to do more time—he would still be in when his Wyandotte County case ended, but he was going to at least for the next period of time. And it seemed to me that it was a significant period, like a couple of years I think he had left to do on one case. And so he was going to double dip at least for a—two years is what it seems to me, but now I don't remember exactly."

Todd also testified that he was not sure if he went over postrelease supervision with Lawson, but he certainly told Lawson the minimum and maximum sentence he could be

4

facing, as well as the fact that the trial court was not bound by the terms of the plea agreement.

Following Todd's testimony, the parties made arguments and the trial court took the matter under advisement. The trial court ultimately denied Lawson's motion. In denying Lawson's motion, the trial court found:

"I felt that Mr. Todd's testimony was very credible.

"He indicated that he had explained to the defendant what a concurrent sentence meant with the Wyandotte County case.

"He did the calculation. He indicated to the defendant there would be additional time for this case. This wasn't a freebie.

"This was from my notes and the testimony that he explained that to the defendant.

"He also indicated that he gave the defendant a ballpark for his out date that he calculated that. He specifically remembered this case and explained to the defendant it would mean additional time for him and explained the concurrent and consecutive differences.

"Mr. Todd is a competent lawyer. I believe he was very competent in representing the defendant.

"I didn't find the defendant's testimony regarding that issue to be credible.
. . . . .

"Regarding the issue of post release, in looking through the law on that, the statute K.S.A. 22-3210 outlines the requirement for a plea of guilty or no contest.

"The Court did follow the mandates in that statute.

"The Court informed the defendant of the consequences of his plea, including the sentencing guidelines level and the penalty provided by law.

"The plea was freely and voluntarily made.

"I made sure he understood the nature of the charge and the consequence of his plea. I was satisfied that there was a factual basis for that plea.

"I believe that was sufficient. I think the case law supports the fact that the Court followed the law in advising the defendant of the consequences.
. . . .

5

". . . [T]he defendant was advised properly, and . . . he was represented by competent counsel.

"There is not good cause here to allow the defendant to withdraw his plea. There is no injustice at all."

Next, the trial court sentenced Lawson to 130 months' imprisonment followed by 24 months' postrelease supervision, which was the standard presumptive prison sentence for Lawson's criminal history score of A. The trial court ordered that Lawson's sentence run concurrent to his sentence for his Wyandotte County case. Lawson's journal entry of judgment states that he received 128 days of jail credit for his time incarcerated in jail between July 1, 2014, and February 3, 2015.

Lawson timely appealed.

*Did the Trial Court Err by Denying Lawson's Presentencing Motion to Withdraw Plea?*

Appellate courts review defendants' challenges from the denial of a presentencing motion to withdraw plea for an abuse of discretion. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). A trial court abuses its discretion if its decision was based on an error of law, was based on an error of fact, or was otherwise unreasonable. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). While engaging in this analysis, appellate courts do not reweigh evidence or reassess witness credibility. Instead, appellate courts give deference to the trial court's factual findings. See *State v. Appleby*, 289 Kan. 1017, 1038, 221 P.3d 525 (2009).

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2016 Supp. 22-3210(d)(1). Defendants have established good cause as meant under K.S.A. 2016 Supp. 22-3210(d)(1) if they have shown (1) that they were

6

represented by incompetent counsel, (2) that they were misled, coerced, mistreated, or unfairly taken advantage of, or (3) that their pleas were not fairly or understandingly made. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

On appeal, Lawson argues that the trial court acted unreasonably when it denied his presentencing motion to withdraw plea because he misunderstood what "concurrent sentences" meant as used in his plea agreement with the State. He argues that this misunderstanding made him miscalculate when his sentence would begin. In making this argument, Lawson relies on *State v. Denmark-Wagner*, 292 Kan. 870, 878, 258 P.3d 960 (2011). In that case, Denmark-Wagner argued that he should be able to withdraw plea because he misunderstood what "life in prison" meant. 292 Kan. at 880. Our Supreme Court rejected Denmark-Wagner's argument, holding:

> "The written plea agreement and the plea hearing both demonstrate that Denmark-Wagner was well informed about his likely sentence and that he affirmed his understanding of this information. At the hearing on his motion to withdraw his plea, Denmark-Wagner could not point to anything suggesting that life in prison meant anything other than a prison term up to the length of Denmark-Wagner's entire natural life. In fact, the district judge confirmed during the plea hearing that Denmark-Wagner understood that a life sentence meant Denmark-Wagner could spend 'the rest of [his] natural life' in prison. Denmark-Wagner's assertion that his plea was unintelligently made on this basis is meritless." *Denmark-Wagner*, 292 Kan. at 880.

Lawson contends that unlike Denmark-Wagner, he was not well informed what concurrent sentences meant, and he provided an explanation why he thought concurrent sentences meant something other than what it actually meant. Alternatively, Lawson asserts that even if Todd had explained the meaning of concurrent sentences to him, the trial court should have allowed him to withdraw plea because he misunderstood what concurrent sentences meant. Lawson asserts that no matter what, the trial court abused its discretion and he should be allowed to withdraw plea.

7

The State counters that even though Lawson may have taken the additional step of explaining why he was allegedly confused about the meaning of concurrent sentences, Lawson's argument downplays Todd's testimony and the trial court's credibility determinations. The crux of the State's analysis involves comparing Lawson's case to *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). The State argues that Lawson's case is similar to *Anderson* but also a clearer case of proper judicial conduct than the *Anderson* case.

In *Anderson*, Anderson took a plea deal where his sentence for his current crime would run concurrent to a sentence for a crime he was already serving; Anderson later sought to withdraw his plea, asserting that his attorney failed to adequately explain what concurrent sentences meant. Our Supreme Court found that although some evidence supported Anderson's argument because Anderson's attorney had made inconsistent statements about how concurrent sentences worked, it held that the trial court "was in a better position to determine credibility." 291 Kan. at 856. Then, our Supreme Court held that because the trial court found Anderson's attorney's testimony that he properly advised Anderson more credible than Anderson's testimony that he did not, it would defer to the trial court's credibility determination. As a result, our Supreme Court held that the trial court did not abuse its discretion when it denied Anderson's motion. 291 Kan. at 856-57.

In drawing guidance from the *Anderson* decision, Todd's testimony, and the trial court's credibility determinations, it is readily apparent the trial court did not abuse its discretion when it denied Lawson's presentencing motion to withdraw plea. As the State has argued, Lawson has downplayed Todd's testimony and the trial court's credibility determinations. Once again, Todd testified that he explained to Lawson what concurrent sentences meant within the context of his robbery sentence and the Wyandotte County sentence. Moreover, unlike the attorney in *Anderson*, Todd never provided inconsistent

8

testimony on this subject. Most importantly, in denying Lawson's motion, the trial court explicitly found Todd's testimony on the issue "very credible" while it did not find Lawson's "testimony regarding that issue to be credible."

As a result, the trial court clearly believed that Lawson understood what it meant to have his robbery sentence run concurrent to his Wyandotte County sentence when he entered his no contest plea. Moreover, this court does not reassess the trial court's witness credibility determinations, but this is exactly what Lawson's argument asks this court to do. See *Appleby*, 289 Kan. at 1038. Thus, we reject Lawson's argument.

In his pro se supplemental brief, Lawson also argues we must allow him to withdraw plea because he did not understand that he would have to serve postrelease supervision upon the completion of his robbery prison sentence. To review, Lawson was sentenced to 24 months' postrelease supervision in this case. The trial court ordered that his sentence run concurrent to his Wyandotte County sentence; the Wyandotte County sentence, however, includes a term of 36 months' postrelease supervision. At his evidentiary hearing on his motion to withdraw plea, Lawson testified that he knew he was required to serve a 36-month term of postrelease supervision for his Wyandotte County case upon his release from prison. Moreover, we note that Lawson's time to appeal his Wyandotte County convictions has long since expired, and he has in no way challenged his underlying sentence in that case in this appeal.

Because Lawson's Wyandotte County postrelease supervision sentence is a full year longer than his postrelease supervision sentence in this case, Lawson's postrelease supervision sentence in this case has no real world effect. In short, Lawson's misunderstanding about whether he would have to serve postrelease supervision for this case is immaterial given that he had already been sentenced to 36 months' postrelease supervision for the Wyandotte County case. Here, because Lawson has presented an

9

argument without a controversy, we decline to consider his argument, holding it moot. See *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014).

*Did the Trial Court Err in Calculating Jail Credit?*

K.S.A 22-3504(2) states: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." The application of K.S.A. 22-3504(2), which necessarily involves statutory interpretation, is a question of law over which this court exercises unlimited review. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015) (this court exercises unlimited review on issues of statutory interpretation).

Lawson's next argument is that there is a clerical error on his journal entry of judgment. He asserts that for the period of incarceration between July 1, 2014, and February 3, 2015, he should have received 218 days of jail credit, not 128 days of jail credit. The State concedes this was error given that there are 218 days between July 1 2014, and February 3, 2015. Because Lawson was not credited with all the time he spent in jail, we remand to the trial court with directions to correct this clerical error.

*Did the Trial Court Err by Using Lawson's Criminal History to Increase His Sentence?*

Lawson's final argument is that the trial court erred when it used his criminal history to enhance his presumptive prison sentence without first submitting his criminal history to a jury for proof beyond a reasonable doubt. Lawson argues that the trial court's failure to do this was violative of his Sixth and Fourteenth Amendment rights as explained by the United States Supreme Court in *Apprendi.* Nevertheless, our Supreme Court has rejected this exact argument in *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002), explaining that "[t]he KSGA builds criminal history into the calculation of a

10

presumptive sentence, rather than using criminal history as an enhancement." The *Ivory* court also explained that the *Apprendi* Court explicitly carved out an exception for courts to use a defendant's prior conviction to increase that defendant's penalty. 273 Kan. at 46.

Absent some indication that our Supreme Court is moving away from a prior holding, this court is duty bound to follow Supreme Court precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no indication that our Supreme Court is moving away from *Ivory*. Therefore, we are bound to follow *Ivory*, and we reject Lawson's argument on this basis.

Affirmed in part and remanded with instructions to correct Lawson's jail credit.