NOT DESIGNATED FOR PUBLICATION

No. 118,724

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RANDY L. HUCKEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN, judge. Opinion filed January 11, 2019. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: Because Randy L. Huckey failed to show proof of excusable neglect to the district court that would excuse his failure to file his motion to withdraw his plea within one year as the law requires, the court denied his motion as untimely. Huckey asks us to reweigh the evidence and set aside the court's credibility determinations. This we will not do. Instead, we affirm the court's ruling dismissing his motion.

1

After negotiations with the State, Huckey pled guilty to amended charges of aggravated sexual battery and burglary, severity level seven person felonies. The parties anticipated Huckey's criminal history score would be A. In exchange, the State agreed to recommend the high number in the grid box for each count, and that the sentences should be concurrent. The agreement also stated that Huckey would have to register as a sex offender for a period of time, and the term of postrelease supervision was 12 months.

Indeed, the presentence investigation report revealed that Huckey's criminal history score was A. At the sentencing hearing, Huckey spoke at length on his own behalf and in support of a dispositional departure to a residential program. He told the court that he embraced sobriety and education in the 18 months he had been "locked up" and how he recognized that he needed skills training in multiple areas of his life to break his pattern of failing to adjust to the world outside of prison. Huckey stated that he learned he was capable of getting good grades and trying new things. He reasoned that the residential program was in a positive environment and lasted 12 months, but if the district court sentenced him to the negative environment of prison, after good time and jail credits, he would only have approximately seven months left to serve. Huckey read excerpts from what appeared to be a rescue mission's informational brochure to the district court.

The sentencing court denied his motion for a dispositional departure from presumptive prison to community corrections. The court followed the terms of the plea agreement and sentenced Huckey to the aggravated terms to be served concurrently, for a controlling sentence of 34 months and 12 months' postrelease supervision. The court informed Huckey that he was required to register as a sex offender under the Kansas Offender Registration Act but did not specify the time frame. Huckey requested a copy of the duty to register so he would not forget his obligations. The State later indicated the term of registration was 15 years. The district court informed Huckey of his right to appeal. Huckey did not appeal.

Nearly two years after sentencing, the State filed a motion to correct an illegal sentence, arguing that under K.S.A. 22-3717, Huckey's term of postrelease supervision should have been lifetime. On the day of hearing the State's motion, Huckey's attorney was in court on another matter. He was reappointed to represent Huckey at the motion hearing that day.

The trial attorney and the State confirmed that the law in effect at Huckey's sentencing required lifetime postrelease supervision. Huckey's trial attorney explained this to him and told him what was going to happen at the hearing. In addition to arguing for lifetime postrelease supervision, the State also argued that Huckey's period of registration under the Act should have been 25 years.

The district court granted the State's motion and proceeded to sentence Huckey. Huckey's attorney objected to the correction of the term of Huckey's postrelease supervision, but he also argued that terms of registration and postrelease supervision are "collateral consequences rather than the actual sentence itself" and thus did not warrant correction. Huckey's attorney suggested that the district court did not have the authority to correct these aspects of the sentence.

Huckey chose not to speak at his resentencing. The district judge sentenced Huckey to register under the Act for a period of 25 years and corrected his term of postrelease supervision to lifetime. Huckey did not appeal.

Nearly three years after that, in April 2017, Huckey filed a pro se motion to appoint legal representation, which the district court interpreted as a motion to withdraw his plea. The district court appointed a different lawyer to represent Huckey in the matter, and she subsequently filed a motion to withdraw Huckey's plea in July 2017. At the evidentiary hearing on Huckey's motion, both Huckey and his trial counsel testified.

Ultimately, the court ruled from the bench and denied Huckey's motion to withdraw his plea. The district court expressed concern that lifetime postrelease supervision was not addressed at Huckey's plea or at sentencing and that the presentence investigation report indicated the inaccurate term of 12 months. However, the district court acknowledged that in the context of the case, it would be speculation to try and determine what effect, if any, it would have had if:

- Huckey and his trial counsel had more time to confer before resentencing;
- the trial attorney had received more notice prior to resentencing; or
- a direct appeal after resentencing would have had an impact on a subsequent motion to withdraw plea.

The district court observed that Huckey had notice "for some period of time" and was "well aware" that the State was seeking lifetime postrelease supervision. The district court denied the motion on procedural grounds, finding that Huckey had not met his burden to demonstrate excusable neglect for failing to file his motion within the one-year statutory time limit.

To us, Huckey claims that he demonstrated sufficient excusable neglect to justify an extension of the statutory one-year time limit because he believed he had a direct appeal pending after his resentencing, he was unaware of his option to file a motion to withdraw his plea, and he developed intermittent mental health issues. The State argues that the district court did not abuse its discretion and it should be affirmed.

Our law allows a defendant to withdraw a plea after conviction under limited circumstances. To correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea. K.S.A. 2017 Supp. 22-3210(d)(2). However, a postsentence motion to withdraw a plea must be filed within one year of either:

4

"(A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States Supreme Court or issuance of such court's final order following the granting of such petition." K.S.A. 2017 Supp. 22-3210(e)(1).

See *State v. Moses*, 296 Kan. 1126, 1127-28, 297 P.3d 1174 (2013). Huckey concedes that his motion was filed outside the one-year time limit. He claims that the time limit should be extended.

This one-year time limit may be extended only "upon an additional, affirmative showing of excusable neglect by the defendant." K.S.A. 2017 Supp. 22-3210(e)(2). The showing of excusable neglect must justify why the defendant waited until after the one-year deadline before filing his motion. See *State v. Edwards*, No. 115,612, 2017 WL 4081449, at *3 (Kan. App. 2017) (unpublished opinion), *rev. denied* June 25, 2018. Where a defendant makes no attempt at an affirmative showing of excusable neglect, an appellate court will find the motion untimely and procedurally barred. *State v. Williams*, 303 Kan. 605, 608, 366 P.3d 1101 (2016).

In our view, an important case on this issue is *State v. Davisson*, 303 Kan. 1062, 1070, 370 P.3d 423 (2016). In *Davisson*, the court stated, ignorance of the statute's existence or other assertions of ignorance of the law does not constitute excusable neglect under K.S.A. 2017 Supp. 22-3210(e)(2).

Huckey acknowledges that under *Davisson*, ignorance of the law is not sufficient to establish excusable neglect but instead argues that the claims in his case are distinguishable from Davisson's claim. Huckey claims that—in addition to ignorance of the law and a lack of resources—he also established mental health issues and a reliance on his trial counsel to demonstrate sufficient facts for the district court to find excusable neglect.

5

Huckey claims that it was "well established" at his evidentiary hearing that he suffers from "significant mental illnesses that are very difficult to treat."

Three reasons persuade us otherwise. First, Huckey cites exclusively his own testimony at the hearing but does not offer any psychological reports or diagnostic evaluations to substantiate his claims. Second, he cites mental health issues in the year *prior to* his motion hearing but does not establish that he was suffering from the effects of any mental health conditions in the year *following* his resentencing—the time in which a motion to withdraw his plea would have been timely.

Finally, Huckey claims that mental illness "can provide the basis of excusable neglect" and cites as support *State v. Woods*, No. 105,728, 2012 WL 2045353, at *3-4 (Kan. App. 2012) (unpublished opinion).

*Woods* does not help much. Mental health can be a factor in determining whether excusable neglect is established; however, the panel in *Woods* held that the district court erred because it failed to hold an evidentiary hearing on the defendant's motion to withdraw his plea when he claimed his mental illness was the reason for his untimely motion. The panel found that a remand was warranted to allow for an evidentiary hearing so the district court could determine whether the defendant's failure to file a timely motion was due to excusable neglect caused by his mental illness. 2012 WL 2045353, at *3-4.

That is not the case here because the district court held an evidentiary hearing to collect evidence pertinent to Huckey's claims. The court made findings of fact acknowledging Huckey's mental health issues. The court found his mental health issues manifested in a finding of incompetence earlier in 2017 in connection with another case, and for which Huckey was in Larned State Hospital for approximately three months before regaining competence. Huckey does not claim that this finding was in error.

6

Huckey also does not claim that the district court made erroneous factual findings about his mental health pertinent to the statutory one-year time frame in which he could have timely filed his motion to withdraw plea by June 6, 2015.

We can find no fault with the court's findings or reasoning on this point. We now turn to his claim of reliance on counsel.

Huckey also claims that he established excusable neglect by his reliance on his trial counsel after his resentencing. He cites *State v. Landers*, No. 116,652, 2018 WL 385697, at *7 (Kan. App. 2018) (unpublished opinion), *rev. denied* August 30, 2018, to support his claim that "excusable neglect may be shown 'because of the reliance on the care and vigilance of the party's counsel. . . .'" But in *Landers*, as here, the defendant claimed he asked his attorney for assistance. That attorney testified that the defendant's letters did not request that he file a motion to withdraw his plea or any other motions with the court. In affirming the district court, the *Landers* panel determined that the defendant did not rely on the care and vigilance of his attorney. 2018 WL 385697, at *7.

The record here reveals that Huckey did not remember if he asked his attorney to file a notice of appeal after his resentencing, or if his attorney brought it up. While Huckey testified he believed an appeal was filed, his trial attorney testified that he explained to Huckey that the initial sentence was illegal and an appeal was not likely to succeed.

Huckey's attorney did not recall whether Huckey directed him to file the appeal, but he believed they abandoned the subject after he explained to Huckey the appeal would not "bear much fruit." Huckey made no efforts to contact his trial attorney after resentencing, nor did he contact the court to confirm his appeal was on file. Huckey acknowledged he never received anything from an appellate attorney, and he did not contact his trial attorney when he got out of prison. The record further reflects that

7

Huckey filed a successful pro se motion for recalculation of jail credit in 2013 and appealed another criminal case from Ellsworth County in 2015 from which he received correspondence from his attorney. The record also shows that Huckey was capable of learning, logical reasoning, and arguing on his own behalf to the district court.

Additionally, the district court found that:

- Huckey received the State's motion to correct the illegal sentence in advance of the hearing;
- Huckey was displeased at the imposition of lifetime postrelease supervision and discussed that with his trial attorney, but the two did not discuss withdrawing Huckey's plea;
- Huckey's trial attorney did not recall if Huckey directed him to file an appeal; and
- it would be mere speculation to consider how a direct appeal after resentencing would have affected the time line for filing a motion to withdraw Huckey's plea.

The district court concluded that these facts did not support an additional affirmative showing of excusable neglect by Huckey in not filing his motion to withdraw his plea within one year of the termination of appellate jurisdiction.

Huckey acknowledges the district court made factual findings regarding his mental health but argues "it did not seem to factor into its decision." Huckey also argues that "it is clear [he] believed he had an appeal going, and that [his trial attorney] told him he would file one." But this argument misstates the testimony and suggests that because Huckey was adamant and his trial attorney's memory was less certain, the district court erred in finding that the facts did not demonstrate that he relied on his trial attorney.

8

Basically, Huckey's argument that the district court abused its discretion based on errors of fact is an invitation to this court to reweigh the evidence and the district court's credibility determinations. Appellate courts do not reweigh evidence or assess the credibility of witnesses. Instead, appellate courts defer to trial court's findings of facts. *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011). Huckey did not meet his burden to demonstrate that the district court made any errors of fact. The district court did not abuse its discretion in denying Huckey's postsentence motion to withdraw his plea.

Finally, for the first time on appeal, Huckey claims that the district court did not inform him of his right to appeal from the resentencing. He contends that this, in addition to his trial attorney failing to "perfect an appeal," qualifies for an out-of-time direct appeal under *State v. Ortiz*, 230 Kan. 735-36, 640 P.2d 1255 (1982).

A district court's decision on whether an exception under *Ortiz* applies in a given case is reviewed on appeal under a dual standard. First, the appellate court reviews the facts underlying the district court's ruling for substantial competent evidence. However, the legal conclusion made by the district court on those facts about whether the exception applies is reviewed de novo. *State v. Smith*, 303 Kan. 673, 677, 366 P.3d 226 (2016).

The filing of a timely notice of appeal is jurisdictional, and if the appeal is not taken within the 14-day period fixed by statute, it must be dismissed. A limited exception to this general rule is recognized in the interest of fundamental fairness only in those cases where an indigent defendant was either: (1) not informed of the right to appeal; (2) was not furnished an attorney to pursue an appeal; or (3) was furnished an attorney for that purpose who failed to perfect and complete an appeal. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

The trouble with this argument is that Huckey claimed throughout his motion hearing, and again on appeal, that he was aware of his right to appeal because he and his

trial attorney discussed the possibility immediately following the resentencing hearing. The record on appeal satisfies the State's burden to demonstrate Huckey had actual knowledge of his right to appeal.

Further, as discussed above, Huckey did not establish that he directed his trial attorney to file an appeal from the resentencing. To find otherwise—that Huckey would have timely appealed had he known he could—requires us to not only ignore all of Huckey's arguments about his reliance on his trial attorney to file a direct appeal after resentencing, but to reweigh the evidence, which this court does not do. *Anderson*, 291 Kan. at 855. Huckey has simply not shown us that he is entitled to any *Ortiz* relief.

Affirmed.

10