NOT DESIGNATED FOR PUBLICATION

No. 116,770

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SCOTT JAMES BUCHHEIT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK JR., judge. Opinion filed March 16, 2018. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

PER CURIAM: Scott James Buchheit appeals his conviction and sentence following his no-contest plea to one count of rape. Buchheit claims the district court erred in denying his presentence motion to withdraw his plea. He also claims the district court erred in assessing a $400 KBI lab fee and a $200 DNA database fee at sentencing. Finding no merit to Buchheit's claims, we affirm the district court's judgment.

We will review the factual and procedural history of the case. On February 10, 2015, C.N.B. reported to the Jackson County Police Department that her stepfather, Buchheit, had been sexually abusing, raping, and sodomizing her two or three times per

1

month since she was approximately nine years old. C.N.B. was 17 years old when she reported the sexual abuse, and her mother and sister accompanied her to the police station to corroborate some aspects of her report.

C.N.B. attempted to call and talk to Buchheit about the abuse while law enforcement was listening, but Buchheit became suspicious and fled the jurisdiction by taking a vehicle belonging to his employer. He was apprehended the next day in Shawnee County and was returned to Jackson County. With the permission of C.N.B.'s mother, the police searched the family residence and identified several semen stains in the bedrooms and the bathroom where C.N.B. reported the abuse had occurred. The semen samples were sent to the Kansas Bureau of Investigation (KBI) laboratory for DNA testing in connection with the investigation of the case.

On February 11, 2015, the State charged Buchheit with three counts of rape, off-grid felonies; three counts of aggravated criminal sodomy, off-grid felonies; three counts of rape, severity level 1 person felonies; three counts of criminal sodomy, severity level 1 person felonies; and one count of theft, a severity level 9 nonperson felony. The district court appointed Russell Roe to represent Buchheit in the criminal proceedings.

At the preliminary hearing on April 14, 2015, C.N.B. testified consistently with her police report, but she indicated that she did not remember Buchheit actually penetrating her vagina with his penis prior to when she was in the eighth grade. Based on C.N.B.'s testimony, the State indicated it would amend the complaint to strike certain off-grid rape allegations and replace them with allegations of aggravated indecent liberties with a child. The district court found the evidence was sufficient to bind Buchheit over for trial on all counts in the amended complaint.

On August 7, 2015, Roe filed a motion to withdraw as defense counsel, citing a letter of complaint sent by Buchheit to the district court. Buchheit's letter alleged that Roe

2

did not visit him regularly at the jail. The district court held a hearing on Roe's motion on August 11, 2015. At the hearing, Buchheit informed the district court that his biggest complaint about Roe was that neither he nor his family could reach Roe when they wanted to speak with him. The district court informed Buchheit that it would be difficult to find another attorney in the district who would be qualified to handle the case. Nevertheless, the district court granted Roe's motion to withdraw.

On August 24, 2015, the district court appointed J. Richard Lake to represent Buchheit, after Lake had met with Buchheit and decided he had time to handle the case. The parties filed pretrial motions which were scheduled for hearing on January 15, 2016. However, two days before the motions hearing, Lake filed a motion for a determination of competency. Lake indicated in his motion that Buchheit did not seem to fully comprehend the information being conveyed to him.

At the January 15, 2016 motions hearing, the district court addressed the competency motion first. Lake argued that Buchheit was "not exactly tracking cognitively," because he kept thinking he was going to make bond, even though Lake told him that was not realistic. The State argued that if a competency evaluation was ordered, it should be performed locally to avoid an additional delay in commencing the trial. The State asserted that if a local evaluation could not be performed for any reason, then another continuance of the trial could be allowed to provide time for Larned State Hospital to perform the competency evaluation. The district court agreed to start with the local evaluation to assess Buchheit's competency to stand trial.

On January 21, 2016, the State filed a motion to set aside the district court's order for a competency evaluation. The State's motion indicated that it had secured audio recordings of Buchheit's telephone calls from jail with an unknown male that revealed Buchheit's plans to seek a delay in his trial by requesting a competency evaluation and

3

also by asking that his attorney be removed from the case. Buchheit and the unknown male also talked about what Buchheit needed to do to appear "not competent."

On January 24, 2016, Buchheit sent a letter to the district court claiming to be "in need of new counsel." Buchheit claimed that his case was not ready for trial to begin on February 16, 2016, and that Lake was not explaining matters related to his case in a way that allowed him to make informed decisions.

On February 3, 2016, the district court held a hearing on the State's motion to set aside the district court's order for a competency evaluation and also on Buchheit's request for new counsel. After a lengthy discussion between the district court and counsel, Lake indicated that he was in a position to try the case. The district court then summarized the State's motion to set aside the order for a competency evaluation and expressed concern that Buchheit was "purposely engaged in a pattern to delay these proceedings as long as [he] can." Buchheit replied, "Your Honor, that is correct. I have been trying to delay it." Buchheit stated that he wanted to delay his trial because his family was trying to gather the funds to hire a different lawyer. Buchheit also stated that he would no longer "play incompetent." Nevertheless, noting that Buchheit's competency evaluation was scheduled for the next day, the district court denied the State's motion to set aside the order for a competency evaluation. The district court also denied Buchheit's request for new counsel. The next day, February 4, 2016, Buchheit was evaluated for competency, and the evaluator determined that Buchheit was competent to stand trial.

Buchheit's trial was scheduled to begin on February 16, 2016. At a pretrial conference on the morning of trial, Lake informed the district court that plea negotiations had been ongoing. Ultimately, Lake announced that Buchheit had decided to take advantage of the plea offer, and he would plead no contest to one count of rape, a severity level 1 person felony, in exchange for the dismissal of all other charges.

4

The district court addressed Buchheit and explained the rights he would be waiving by entering a plea; Buchheit indicated he understood. Buchheit stated he was not under the influence of any drugs, he wanted to enter a plea of his own free will, and no threats or promises induced him to enter his plea. The judge read count three—the rape of C.N.B. by use of force or fear, in violation of K.S.A. 2013 Supp. 21-5503(a)(1)(A)—and told Buchheit that the potential penalty ranged from between 147 months to 653 months. Buchheit entered a plea of no contest to the charge. The State informed the district court of the factual basis for the charge and the evidence it would present if the case were to go to trial. The district court found there was a sufficient factual basis and accepted Buchheit's plea. The district court found Buchheit guilty of rape as set forth in count three, a severity level 1 person felony, and the remaining counts in the amended complaint were dismissed. The district court ordered a presentence investigation report and scheduled sentencing for March 11, 2016.

In a letter to Lake dated February 17, 2016, and filed on February 18, 2016, Buchheit instructed Lake to file a motion to withdraw his plea based, in part, on ineffective assistance of counsel. Buchheit also instructed Lake to file a motion to withdraw as his defense counsel. On February 19, 2016, Buchheit filed a pro se motion to "redact/withdraw the original plea." The State filed a motion in opposition to Buchheit's pro se motion to withdraw his plea.

On February 22, 2016, Lake filed a motion to withdraw as counsel. At a hearing on March 11, 2016, the district court granted Lake's motion to withdraw. A few days later, the district court appointed John Kurth to represent Buchheit. Kurth subsequently filed a supplemental motion to withdraw the plea and attached several exhibits.

On July 15, 2016, the district court held a hearing on Buchheit's motion to withdraw his plea. Buchheit testified at the hearing and expressed dissatisfaction with Lake's performance as his counsel. He complained that Lake did not spend enough time

5

with him on the case. Buchheit also testified that he felt pressured and coerced into entering a no-contest plea on the morning the case was set for trial. Lake testified that he "gave [Buchheit] as much time as I could, and I believe all the time that he needed." Lake acknowledged it was "probably true" that Buchheit felt pressure to enter a plea because every defendant feels such pressure, but he stated, "I don't believe he was coerced."

After hearing the evidence and arguments of counsel, the district found that Buchheit decided to enter his plea after the court had several hearings with him about his issues. The district court recalled that it "spent considerable time discussing the records Buchheit wanted." The district court also recalled from the plea hearing that Buchheit stated he was not coerced into entering his plea, and "in the Court's experience, Mr. Buchheit has not been shy about voicing issues he has." The district court noted that Buchheit entered his plea in front of his family, and "the plea was advantageous to the defendant to a great degree." The district court found Buchheit to be a "sophisticated legal consumer," and he was not misled or coerced into entering his plea.

The district court found that Lake competently represented Buchheit throughout the proceedings. The district court recalled the delays involved with Buchheit's competency evaluation and found that Buchheit had engaged in a purposeful effort to delay and manipulate the trial in his case. Finally, the district court observed that C.N.B. planned to testify, and the State also was prepared to present supporting evidence through corroborating witnesses and Buchheit's attempt to flee the state. Based on the district court's findings, it denied Buchheit's motion to withdraw his plea.

The district court then proceeded to sentencing. After hearing arguments, the district court sentenced Buchheit to 226 months' imprisonment and assessed various fees, including a KBI lab fee of $400 and a DNA database fee of $200. The district court waived the assessment of attorney fees. Buchheit timely filed a notice of appeal.

6

Buchheit first claims the district court erred in denying his presentence motion to withdraw his plea. Specifically, Buchheit argues that he was not represented by competent counsel and that he was coerced into making his plea on the morning of his scheduled trial. He argues that he established good cause to withdraw his plea and that the district court committed reversible error by denying his motion. The State argues that Buchheit did not establish good cause to withdraw his plea as he was represented by competent counsel and was not coerced into entering the plea.

A plea of guilty or nolo contendere may be withdrawn at any time prior to sentencing for good cause and within the discretion of the district court. K.S.A. 2017 Supp. 22-3210(d)(1). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015), *cert. denied* 137 S. Ct. 164 (2016).

In exercising its discretion on a motion to withdraw plea, the district court should consider whether (1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district court may also consider other relevant factors in determining whether good cause exists to allow the withdrawal of a plea and should not rely exclusively on the *Edgar* factors. See *State v. Anderson*, 291 Kan. 849, 856, 249 P.3d 425 (2011).

Buchheit does not argue that the plea was unfair or made without understanding. However, he contends that he fulfilled the other two *Edgar* factors: He was not

represented by competent counsel; and he was coerced into making his plea on the morning of his scheduled trial. Whether good cause exists to support the withdrawal of a plea is a question of fact, which an appellate court reviews for substantial competent evidence. *Anderson*, 291 Kan. at 855. Substantial competent evidence is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.' [Citation omitted.]" *Wiles v. American Family Life Assurance Co*., 302 Kan. 66, 73, 350 P.3d 1071 (2015). Appellate courts give deference to the district court's findings of fact and do not reweigh the evidence or assess witness credibility. *State v. Appleby,* 289 Kan. 1017, 1038, 221 P.3d 525 (2009).

*Competent counsel*

Buchheit claims that Lake failed to demonstrate competent representation and, in fact, demonstrated "lackluster advocacy." Buchheit bases his claim on: (1) his belief that Lake did not sufficiently communicate with him, i.e., Lake made short term visits to him in jail; and (2) his perception that Lake failed to investigate his case, i.e., Lake failed to obtain certain records pertaining to C.N.B., which Buchheit believed would have shown that she was sexually abused by another man.

The record on appeal does reflect that Lake did not file a motion for certain materials which Buchheit believed would be admissible at trial under an exception to the rape shield statute. See K.S.A. 2013 Supp. 21-5502(b). However, the record also demonstrates that Lake sought a release for the records, as directed by Buchheit, but this request was refused by the State. Further, Buchheit filed a motion, pro se, in district court to obtain the records, but the district court denied the motion after a lengthy hearing at which all of Buchheit's requests were addressed in detail. Finally, Lake testified that he did not continue to pursue the records because, in his professional opinion, all of the information within the records was protected by the rape shield statute.

8

The district court found that Lake's failure to pursue the records did not rise to the level of incompetent counsel and Buchheit did not meet his burden to demonstrate good cause to withdraw his plea on this basis. Buchheit's claims that Lake did not adequately communicate with him are interwoven into his argument about Lake's failure to pursue the desired records. Buchheit claims that the frequency and duration of their meetings was inadequate, but he fails to demonstrate how the result of his case would have been any different had Lake spent more time pursuing the records. Based on the record, we conclude that the district court's factual findings in determining Lake provided competent representation of Buchheit are supported by substantial competent evidence.

*Coercion*

Buchheit contends that he decided to enter a plea "minutes" before his trial was to begin because, "[h]e felt he had no other choice because they were not ready for trial and, therefore, he was coerced." He also contends that he only "took the plea in order to avoid the Hard 50." The record on appeal reveals that plea negotiations were initiated by the defense with Buchheit's blessing about three weeks before the trial date. Buchheit was facing two off-grid person felony charges for rape and aggravated indecent liberties with a child under the age of 14, in addition to six other felony charges, four of which were severity level 1 person crimes.

Lake acknowledged that Buchheit probably felt pressure, as all defendants do, when faced with the decision of whether to proceed to trial or enter a plea, but he denied any coercion. Lake testified that he did not recall telling Buchheit he was facing a "hard 50," but he agreed that Buchheit was ultimately charged with two off-grid felonies, and if convicted of both, and if the district court ordered those sentences to run consecutively, such a lengthy sentence was a possibility. When an attorney delivers harsh but accurate advice about the consequences of going to trial rather than taking a plea, that advice does

9

not constitute undue influence. *State v. Taylor*, No. 112,442, 2015 WL 6835220, at *4 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1022 (2016).

The district court was in a better position to determine witness credibility and assess the evidence concerning Buchheit's claim that he was coerced into entering a plea. Buchheit is asking this court to reweigh the evidence on the claim of coercion, which this court does not do. *Appleby*, 289 Kan. at 1038. We conclude that the district court's factual findings that Lake did not mislead or coerce Buchheit into entering his plea are supported by substantial competent evidence.

In sum, the district court's denial of Buchheit's motion to withdraw his plea was not based on an error or mistake of law or fact. Based on our review of the record, reasonable persons could take the view adopted by the district court. Therefore, we conclude that the district court did not abuse its discretion in denying Buchheit's motion to withdraw his plea.

ASSESSMENT OF FEES

For the first time on appeal, Buchheit claims the district court erred in assessing a $400 KBI lab fee and a $200 DNA database fee at sentencing. As to the KBI lab fee, Buchheit argues that the district court had an obligation to sua sponte consider his ability to pay the fee before making the assessment. He also contends that the assessment of this fee was inappropriate because the State ultimately did not intend to use the semen samples tested by the KBI as evidence at trial. As to the DNA database fee, Buchheit argues that the district court had an obligation to sua sponte consider his ability to pay the fee before making the assessment. The State argues that the district court correctly assessed the $400 KBI lab fee and the $200 DNA database fee.

10

Buchheit acknowledges that he did not raise the issue of the fees in district court. However, he contends that the issue can be raised for the first time on appeal because it is analogous to the claim addressed in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). In *Robinson*, the Supreme Court addressed whether it would consider a challenge to the assessment of Board of Indigent Defense Services (BIDS) attorney fees for the first time on appeal and stated, "[W]e may reach an issue on appeal despite a failure to raise it below when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case." 281 Kan. at 541.

Buchheit also points to *State v. Smith*, No. 111,747, 2015 WL 1783770, at *2 (Kan. App. 2015) (unpublished opinion), where a panel of this court agreed to hear the issue, raised for the first time on appeal, of whether the KBI laboratory fee could be assessed in a case that was dismissed pursuant to a plea agreement. Without deciding whether Buchheit has properly preserved this issue for appeal—and while making it clear that we are not setting precedent for future cases—we will address the merits of Buchheit's claim.

The district court's assessment of the KBI lab fee and the DNA database fee are governed by statute. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). It is a fundamental rule of statutory construction that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 303 Kan. at 813.

11

We will first address the DNA database fee. This fee is authorized by K.S.A. 2017 Supp. 75-724, which states in pertinent part:

"(a) Any person convicted or adjudicated of an offense that, pursuant to K.S.A. 21-2511, and amendments thereto, requires submission of a DNA sample upon arrest, charging or placement in custody, shall pay a separate court cost of $200 as a Kansas bureau of investigation DNA database fee upon conviction or adjudication.

"(b) The court shall order such fees regardless of whether the person's DNA sample was already on file with the Kansas bureau of investigation at the time such person was arrested, charged or placed in custody, unless the person can prove to the court that the person: (1) Has paid such fees in connection with a prior conviction or adjudication; and (2) did not submit specimens of blood or an oral or other biological sample authorized by the Kansas bureau of investigation to the Kansas bureau of investigation for the current offense of conviction or adjudication.

"(c) The court shall not lessen or waive such fees unless the court has determined such person is indigent and the basis for the court's determination is reflected in the court's order."

In *State v. Niehaus*, 54 Kan. App. 2d 29, Syl. ¶ 3, 395 P.3d 455 (Kan. App. 2017), *rev. denied* 307 Kan. ___ (December 22, 2017), this court addressed the exact issue Buchheit is raising on appeal and held that a district court is not required under the plain language of K.S.A. 2016 Supp. 75-724 to sua sponte consider a defendant's ability to pay the DNA database fee. This court reasoned that the language in K.S.A. 2016 Supp. 75-724 is mandatory and requires assessment of the database fee unless the defendant proves that the fee does not apply. 54 Kan. App. 2d at 31-33. This court also reasoned that unlike K.S.A. 22-4513, the statute that authorizes the assessment of BIDS attorney fees, there is no language in K.S.A. 2016 Supp. 75-724 that requires findings by the district court concerning a defendant's ability to pay the database fee. 54 Kan. App. 2d at 32. We adopt the court's reasoning in *Niehaus* and conclude the district court did not err in assessing the DNA database fee against Buchheit without first considering his ability to pay the fee. See also *State v. Jackson*, No. 116,259, 2017 WL 4081263 (Kan. App. 2017)

(unpublished opinion) (holding there is no requirement under the DNA database fee statute that a district court sua sponte engage in a financial analysis of the defendant before ordering the fee), *petition for rev. filed* October 16, 2017.

Turning to the KBI lab fee, this fee is authorized by K.S.A. 2017 Supp. 28-176, which states in pertinent part:

> "(a) The court shall order any person convicted . . . of a felony . . . to pay a separate court cost of $400 for every individual offense if . . . laboratory services . . . are provided, in connection with the investigation, by: (1) The Kansas bureau of investigation. . . .
> "(b) Such fees shall be in addition to and not in substitution of any and all fines and penalties otherwise provided for by law for such offense.
> "(c) The court shall not lessen or waive such fees unless the court has determined such person is indigent and the basis for the court's determination is reflected in the court's order." K.S.A. 2017 Supp. 28-176(a)(1), (b), (c).

Buchheit again argues that the district court had an obligation to sua sponte consider his ability to pay the KBI lab fee before making the assessment. We disagree. Although *Niehaus* does not specifically address the KBA lab fee statute, the language of the statute is sufficiently similar to that of the DNA database fee statute—and therefore sufficiently dissimilar from the BIDS fee statute—to suggest the analysis and outcome should be the same: The statute does not obligate the district court to conduct a financial assessment of a defendant before imposing the fee. Under the rules of statutory interpretation, the plain language of K.S.A. 2017 Supp. 28-176 does not require the district court to consider the defendant's financial condition before ordering the fee.

Buchheit also draws attention to a "boilerplate sample court order" form in the record, highlighting certain language on that form: "after making due inquiry, the court finds that the defendant is required to pay the laboratory analysis fee, pursuant to K.S.A.

13

28-176." Buchheit acknowledges that it is not clear what "making due inquiry" refers to in the sample court order form, but he suggests this form is indicative of a court requirement to conduct a financial assessment prior to imposing the fee on a defendant. In the context of the form, however, "making due inquiry" more likely refers to the court inquiring about the type of services that were performed by the KBI in conjunction with the investigation. In any event, the language of the statute controls our resolution of this issue, not the language of any sample court order form used by the KBI.

Finally, Buchheit argues that the assessment of the KBI lab fee was inappropriate because the prosecutor had announced at a pretrial hearing that the State's case against Buchheit was going to be based primarily on witness testimony and not forensic evidence. Buchheit contends that because the State did not intend to use the lab results at trial, he should not be assessed the fee. Again, we disagree with Buchheit's argument. The relevant portion of K.S.A. 2017 Supp. 28-176 reads:  "(a) The court shall order any person convicted . . . of a felony . . . to pay a separate court cost of $400 for every individual offense if . . . laboratory services . . . are provided, *in connection with the investigation*" by the KBI. (Emphasis added.) K.S.A. 2017 Supp. 28-176(a)(1). The assessment of the lab fee is mandatory as long as the laboratory services are provided in connection with the investigation, and it does not matter whether the lab results are used at trial.

Buchheit cites *State v. Aguilar*, 42 Kan. App. 2d 768, 217 P.3d 994 (2009), to support his argument, but Buchheit's reliance on *Aguilar* is misplaced. Aguilar was convicted of a DUI, but the lab fee was assessed to him for testing a substance believed to be marijuana. The *Aguilar* panel concluded that "because Aguilar was never charged with or convicted of a drug-related offense, the $400 lab fee for marijuana testing was not incurred in connection with his case pursuant to K.S.A. 2008 Supp. 28-176(a)." 42 Kan. App. 2d at 770-71. In Buchheit's case, however, the KBI lab fee was assessed for testing semen samples collected from the locations in the home where C.N.B. said Buchheit had

14

sexually abused her. The testing was accomplished in connection with the investigation for sex offenses, including rape, which is Buchheit's crime of conviction.

The State originally filed notice that it intended to use the KBI lab results at trial. While the prosecutor later made statements on the record that the State's case-in-chief would not include scientific evidence, those statements were equivocal. In any event, it is immaterial whether the State intended to use the KBI lab results at trial because a plain reading of the statute demonstrates that the fee is appropriate if laboratory services are provided in connection with the investigation. It is clear from the record that the KBI laboratory services were performed in connection with the investigation of Buchheit for sex offenses, and he was charged with and convicted of a sex offense. Thus, the district court did not err in ordering Buchheit to pay the KBI lab fee.

Affirmed.