NOT DESIGNATED FOR PUBLICATION

No. 119,294

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY J. OTANO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed May 10, 2019. Affirmed.

*Charles A. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and POWELL, JJ.

PER CURIAM: Anthony J. Otano pleaded guilty to possession of marijuana and possession of cocaine. Before sentencing, he moved to withdraw his plea. The district court denied Otano's motion to withdraw his plea and sentenced him to probation. Otano now appeals, arguing that the district court abused its discretion by denying his motion to withdraw his plea. For the reasons stated below, we affirm.

1

In case No. 16 CR 1193, the State charged Otano with possession of cocaine, a severity level 5 felony; possession of marijuana, a class A misdemeanor; and a traffic infraction. In case No. 16 CR 926, the State charged Otano with criminal possession of a weapon by a felon, a severity level 8 felony. The cases were set for a jury trial on September 18, 2017. Attorney Kyle Byfield represented Otano in the matters.

On the morning of September 18, 2017, Otano pleaded guilty to possession of marijuana and possession of cocaine. In exchange, the State dismissed 16 CR 926, as well as the traffic infraction from 16 CR 1193. As the factual basis for the plea, Otano admitted that when a police officer made a traffic stop, the following factual situation occurred:

> "[The police officer] observed a large cloud of marijuana smoke come rolling out of [Otano's] car as [he] rolled down the window. [Otano] confirmed it smelled like marijuana or burnt marijuana. [Otano was] the driver of the car and the only occupant.
>     "A search of the vehicle revealed in the console in a glasses case two plastic baggies of marijuana and one with a powdery white substance which was cocaine. All of those items were tested and confirmed by the science center as being marijuana and cocaine."

The district court accepted Otano's plea.

About a month later, Otano moved to withdraw his plea. In the motion, Otano wrote that he "wasn't aware of the drugs/gun that was in the [car] when pulled over." He also argued that an unnamed "owner of the drugs is willing to testify that the drugs [were] his and [Otano] had no idea they were in the car" and that the car was not Otano's. Otano further wrote that he "would like to motion for a new appointed attorney, who failed to mention this to [him]."

As a result, Byfield withdrew as Otano's counsel and was replaced by a new attorney. The new attorney again moved to withdraw Otano's plea. The motion stated:

"3. The Defendant submits that although he entered a plea of guilty, he only did so because his attorney told him that was the plea bargain, but the Defendant was not guilty of the charges.

"4. The Defendant asserts that the drugs in this case belonged to someone else, but that was never investigated by his attorney.

"5. Following the plea, the Defendant found out that the other person, to wit: Christopher King, was admitting to the possession of the drugs in this case, and has in fact admitted to that in writing.

"6. The vehicle in which the Defendant was stopped was not his vehicle, and the drugs were located in a location that was not visible to the Defendant.

"7. The Defendant submits that he was unaware of the drugs being in the vehicle."

The district court held a hearing on the motion on January 12, 2018. Otano and Byfield both testified.

Otano testified that the car he was driving when he was stopped was not his and that he told Byfield this as well. He admitted that he was the only person in the car when he was stopped.

Otano gave conflicting testimony about when he discovered the "true" owner of the drugs, when the owner admitted the drugs were his, and when Otano conveyed this information to Byfield. Even Otano's attorney conceded that Otano's testimony on these issues was "all over the place."

Otano first testified that "right before" he took the plea, he told Byfield that Christopher King admitted to owning the drugs found in the car. He testified that he told Byfield that he located King at King's mother's house, but that at that time, "It was

3

already too late. We entered that plea." Immediately afterward, however, Otano testified that he did not tell Byfield to do anything about trying to contact King. Then, he said that "roughly a week" after entering the plea, he went and found King at King's mother's house and King admitted that the drugs were his. Then he testified that he and King met with a private investigator on December 29, 2017, and recorded a conversation wherein King admitted the drugs were his.

Otano admitted the transcript of the recorded conversation as an exhibit. Otano stated that "had this information been made available" to him, he would not have entered a plea in this case. Then, Otano's attorney asked, "I think you said I never told my attorney about Christopher King prior to the plea. Is that right?" and Otano responded, "No. By the time it was too late. He was no longer—he couldn't help me, is what he said, because he would be used as a witness in this case now."

During cross-examination, the following exchange occurred:

"Q. Now, a little while ago you testified that you did not tell Mr. Byfield that Christopher King had been the driver—excuse me—had been the owner or the possessor of the drugs in this case, that you did not find that out until a week after you pled?
"A. When I spoke with my attorney back there that's what we were talking about. I misunderstood what he said.
"Q. Okay. So let's make sure we're clear now. You are now testifying that you told Mr. Byfield, your attorney at the time, that Christopher—about the name Christopher King first?
"A. Yes."

Otano later testified that King did not step forward to admit the drugs were his before Otano pleaded because Otano could not get ahold of King before then.

4

The State submitted as evidence the police report from the traffic stop that led to Otano's charges.

On redirect, Otano said he did not find out that King admitted ownership of the drugs until November 24, 2017, this would have been more than two months after Otano pleaded guilty. He then said that "from the beginning," he told Byfield that the drugs were not his. He said that a few weeks before the plea, he told Byfield that Byfield should investigate if someone else owned the drugs. He said that in response, Byfield told him that it would be good to find "him," presumably the owner of the drugs. But Otano said that he could not find where "he" was then. When asked why he did not ask for a continuance to find "him," Otano responded, "I think we ran out of continuances and the prosecutor was in a rush to go."

Additionally, during cross-examination Otano admitted that at the plea hearing he told the presiding judge that he understood the plea agreement. He testified that despite this, he actually did not understand the plea because he had a lot going on in his life and just wanted to get the cases taken care of. He admitted, however, that he did not tell the presiding judge any of this at the plea hearing.

Next, the State called Byfield to testify. Byfield testified that before September 18, 2017, he discussed constructive possession with Otano "many times" because he wanted to convey to Otano the risk that he could be convicted of drug possession even if he was not the "primary owner" of the drugs. Byfield also testified that he explained to Otano that a jury could attribute ownership to him because of the allegations in the police report that he admitted to the police officer he had used marijuana in the car about an hour before the stop.

Byfield testified that about a week before the plea, Otano asked him "if I had someone else come in and say these [drugs] were his would that help me, would that be

5

beneficial." Byfield told Otano that it would be helpful. Byfield testified that Otano did not tell him about King until the day Otano took the plea. He testified:

"[Otano] ultimately told us that Christopher King would be willing to come testify at this trial or the trial that we were actually getting ready for, the 16 CR 926 case. At that time we said, okay, we need to try to get hold of him and get him up here. That was the extent of the conversation about Christopher King, and then I guess the conversation went over into why he should take the plea."

Byfield testified that he would have asked for a continuance in the case because of the new-to-him information about King if the case was still headed for trial, but that he did not ask for a continuance because Otano decided to plead. Byfield testified that about a week after Otano pleaded, King contacted Byfield and said he would take responsibility for the drugs.

In sum, Otano's argument for plea withdrawal was the following: Byfield should have requested a continuance on the day of the scheduled trial before Otano pleaded because Otano told Byfield on that day that Byfield should look into Christopher King. Byfield did not ask for a continuance that day, and "the whole case would have been different" if he had because Otano would not have pled guilty to the possession charges if he knew King would have taken responsibility for the drugs. Because Byfield failed to continue the case and because King came forward months later and made a statement that the drugs were his, the district court should allow Otano to withdraw his plea.

In sum, the State's argument against allowing Otano to withdraw his plea was the following: Otano knew, for the entire two years between his arrest and the scheduled trial that King had been in the car earlier in the night before the stop and that King thus could have left the drugs in the car. Nonetheless, Otano did not tell Byfield about this until the day of the scheduled trial, thus preventing Byfield from investigating King in a timely manner. Further, Byfield would have asked for a continuance had Otano not chosen to

6

plead. Additionally, the State emphasized that Otano and King may not be credible. Finally, the State highlighted that allegations in the police report—e.g., that Otano admitted to using marijuana in the car an hour before the stop and that a "cloud" of marijuana came out of the car's window when Otano rolled it down—would enable a fact-finder to conclude that Otano constructively possessed the drugs even if King asserted they were his. Accordingly, the State argued that Otano failed to show good cause to withdraw his plea.

At a hearing later in January 2018, the district court ruled from the bench on Otano's motion. The district court noted that it considered the credibility of the witnesses, as well as the *Edgar* factors. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district court denied Otano's motion; it concluded that Byfield competently represented Otano and that King's assertion of ownership was not newly discovered evidence. The district court concluded that Otano failed to show good cause to withdraw his plea.

The district court sentenced Otano to 12 months of probation with an underlying prison sentence of 17 months for cocaine possession and 12 months for marijuana possession to run consecutively.

*Did the District Court Abuse Its Discretion by Denying Otano's Motion to Withdraw His Plea?*

Appellate courts apply an abuse of discretion review to a district court's ruling on a presentence motion to withdraw a plea. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009). A district court abuses its discretion if it bases its decision on an error of fact or law, or if no reasonable person could agree with the court's decision. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). The party arguing that the district court abused its discretion bears the burden to establish such abuse. 305 Kan. at 449. When reviewing

for abuse of discretion, this court may not reweigh evidence or reassess the credibility of witnesses. *State v. Anderson*, 291 Kan. 849, Syl. ¶ 3, 249 P.3d 425 (2011).

Under K.S.A. 2018 Supp. 22-3210(d)(1), a defendant may withdraw a guilty plea before sentencing upon a showing of good cause. District courts consider three primary factors—known as the *Edgar* factors—to determine whether a defendant has shown good cause. The *Edgar* factors include "whether '(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made.'" *Edgar*, 281 Kan. at 36. The *Edgar* factors are nonexclusive, and do not all have to be present in order for a defendant to show good cause. *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010).

Here, Otano argues that the district court abused its discretion "because the decision [to deny Otano's motion to withdraw his plea] was unreasonable and that the decision is based on an error of law because it is not supported by the facts." Later in his brief, Otano argues that "all the *Edgar* factors apply." Otano's brief, however, is scarce on authority and argument in support of his position. Otano alleges that the district court abused its discretion by finding Otano had not shown good cause to withdraw his plea. He writes that he "had evidence he did not commit the crime and nothing was done." This assertion, however, oversimplifies the facts of this case and attempts to smooth over Otano's own inconsistent testimony at the plea withdrawal hearing.

Part of Otano's argument can be construed as an assertion that the district court abused its discretion by concluding that Byfield provided Otano with competent counsel. Otano argues that "[a] competent attorney should have requested a continuance even if the Defendant was out of continuances." Otano's argument seems to be that no reasonable person could agree with the district court's conclusion that Byfield provided Otano with competent counsel.

8

Otano says that after he told Byfield the day of trial about King's presence in the car, "the clear remedy" was for Byfield to request a continuance. In fact, Byfield testified that had Otano not taken the plea, he would have requested a continuance. The district court apparently credited Byfield's testimony on this issue, as well as his testimony that King did not step up to take responsibility for the drugs until after Otano had already pleaded. The district court noted that Otano himself was in the best position to find King, as he was King's half-brother. The district court elaborated that Otano was out on bond for six months before he pleaded, but was unable to find King and failed to even mention King to Byfield until the day of the scheduled trial. Given these circumstances, the district court reasoned Byfield's failure to investigate King before the day of trial was not unreasonable, nor was his failure to seek a continuance.

The district court also emphasized that King's admitted ownership of the drugs did not necessarily exonerate Otano from the possession charges. The district court credited Byfield's testimony that Otano risked conviction for constructive possession of the drugs even if King testified that the drugs were his. The district court noted the evidence supporting constructive possession: Otano allegedly admitted to using marijuana in the car an hour before he was pulled over, the officer who stopped Otano alleged he smelled burnt marijuana and saw smoke, and Otano was alone in the car.

The district court concluded:

> "[A]t the time he entered the plea Mr. Otano knew about Mr. King's willingness to give testimony the drugs were his and yet he entered a plea of guilty as charged. While I don't know exactly what he was thinking, I do know there was a reasonable basis to enter the plea. . . . Mr. Otano received a benefit from the plea bargain by getting a felony and misdemeanor dismissed."

Given these findings, the district court reasonably found that Byfield competently represented Otano. Otano admitted to facts sufficient for a jury to convict him for

9

constructive possession even if King testified that the drugs were his. Otano knew that King had been in the car earlier in the evening before Otano was pulled over; nevertheless, Otano did not tell Byfield about King until the day of the scheduled trial. Byfield testified that if the case proceeded to trial he, in fact, would have requested a continuance on the basis of this information. Byfield was prevented from doing so because Otano chose to plead that day and take advantage of the State's offer to dismiss his weapon possession and traffic infraction charges.

The district court judge here did a good job of sorting through meandering, contradictory testimony to arrive at a thoughtful and reasonable conclusion. Accordingly, we reject Otano's argument that no reasonable person would agree with the district court's conclusion that Byfield provided competent representation.

Otano next argues that the district court abused its discretion because it based its decision on an error of fact. Otano notes that the district court found that Byfield told Otano to get ahold of King so that he could testify at the trial. Then, he says that the record "does not support" this conclusion, quoting the following testimony from Byfield:

> "[Otano] ultimately told us that Christopher King would be willing to come testify at this trial or the trial that we were actually getting ready for, the 16 CR 926 case. At that time we said, okay, we need to try to get hold of him and get him up here. That was the extent of the conversation about Christopher King, and then I guess the conversation went over into why he should take the plea."

Otano asserts that "[t]here was no discussion in the record from Mr. Byfield stating to the Defendant to get the witness to the courtroom to schedule or preserve the testimony. Mr. Byfield testified the extent of the conversation." The very testimony that Otano quotes, however, seems to directly contradict his assertion. In the quoted excerpt, Byfield stated:  "At that time we said, okay, we need to try to get hold of [King] and get him up here." Accordingly, this argument lacks merit.

10

While Otano argues that all of the *Edgar* factors apply, he does not make any arguments beyond those considered above. A point raised only incidentally in a brief but not argued is deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015).

Otano failed to carry his burden to establish an abuse of discretion by the district court. See *Schaal*, 305 Kan. at 449. We therefore affirm the district court's judgment.

Affirmed.