NOT DESIGNATED FOR PUBLICATION

Nos. 119,620
119,621
119,622

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAY D. COOK,
*Appellant*.

MEMORANDUM BY THE COURT

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed September 27, 2019. Affirmed in part, sentence vacated in part, and case remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., LEBEN, J., and WALKER, S.J.

PER CURIAM: In the first two of the three cases consolidated for appeal, Shay D. Cook asks us to reverse the district court's denial of his motions to withdraw his guilty pleas in two felony cases filed in 2016. He contends his pleas were coerced by his attorney and they were not understandingly made. We affirm the denial of his motions because Cook has failed to show good cause to withdraw his pleas and we find no abuse of discretion by the district court on this issue.

1

A third case filed in 2017 was consolidated for appeal with the two prior cases. We agree with Cook that a special sentencing rule does not apply. Because Cook was not serving a felony sentence when he committed the third crime, the court erred when it ruled that it was legally obliged to impose a sentence consecutive to the two sentences imposed on Cook in the 2016 cases. We vacate that sentence and remand for resentencing.

For the sake of clarity, we point out that our appellate no. 119,620 pertains to district court no. 16 CR 15; appellate no. 119,621 pertains to district court no. 16 CR 492; and appellate no. 119,622 pertains to district court no. 17 CR 1772.

*We begin with the two 2016 prosecutions.*

The State charged Cook with felony theft, misdemeanor domestic battery, and misdemeanor criminal damage in 16 CR 15 and burglary and felony theft in 16 CR 492. Cook told his attorney that he would agree to a plea agreement with the State but only if the State agreed to recommend probation. The parties did agree and the State offered to dismiss the misdemeanor criminal damage charge and recommend probation in exchange for Cook pleading guilty to the remaining four charges.

Cook violated the conditions of his plea agreement when he failed to report to pretrial services and at sentencing. Cook was arrested for violating his bond conditions. But when he discovered the State was no longer bound by the plea agreement, he tried to withdraw his guilty pleas before sentencing. He contended that his attorney coerced or misled him into accepting the plea agreement and he did not knowingly make the agreement. The district court denied the motions to withdraw after finding Cook failed to show good cause.

Cook now claims that the court abused its discretion when it denied his motions to withdraw his guilty pleas.

*Several rules guide our decision.*

Within its sound discretion, a district court may allow a defendant to withdraw a guilty plea for good cause any time before sentencing. K.S.A. 2018 Supp. 22-3210(d)(1). When doing so, the court should consider three factors—also known as the *Edgar* factors—to determine whether a defendant has shown good cause to withdraw a plea. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors include whether:

- the defendant was represented by competent counsel;
- the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and
- the plea was fairly and understandingly made. *State v. Aguilar*, 290 Kan. 506, 511, 231 P.3d 563 (2010).

But these factors are not to be applied mechanically or to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014).

For our part, we review the denial of a motion to withdraw a plea for an abuse of discretion. *Fritz*, 299 Kan. at 154. As it has been often said, a judicial action constitutes an abuse of discretion if:

- no reasonable person would take the view adopted by the trial court;
- it is based on an error of law; or
- it is based on an error of fact.

*State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

3

The defendant has the burden of proving the district court abused its discretion. *Fritz*, 299 Kan. at 154.

We will not reweigh evidence or assess witness credibility. *State v. Hartpence*, 30 Kan. App. 2d 486, 493, 42 P.3d 1197 (2002). This court generally defers to the trial court's factual findings so long as those findings are supported by substantial competent evidence. See *State v. Anderson*, 291 Kan. 849, 855, 249 P.3d 425 (2011).

*Cook has proved none of the* Edgar *factors required to compel a plea withdrawal.*

Cook centers his attack on the second and third *Edgar* factors. He claims he was misled or coerced by his lawyer and he did not understand what he was doing.

We look first at whether Cook was misled or coerced by his counsel. At the hearing on his plea withdrawal motion, Cook, and his attorney, Dwayna McFerren, both testified. Their evidence is not identical.

Cook testified that McFerren did not provide him with discovery, but she had gone over his charges, made sure he understood them, and discussed facts and details of his cases. Cook testified that he wanted to go to trial and told her he was innocent, but McFerren "kept insisting" he take a plea and told him he would be "found guilty if it went to trial." Cook stated that he told McFerren he would only accept a plea agreement if he could be released on his own recognizance.

Cook stated that after McFerren presented him with an acceptable plea agreement, she started to go over it but he told her she did not need to. Cook testified he told McFerren, "You don't even have to go over it. . . . I'm willing to take . . . the plea, and all she did she just had me sign it, and then I went to court the next day and had it heard." Cook added that he "took the plea to eliminate . . . the variables, the risk of a trial and to

4

take advantage of the probation I was being offered, and especially the immediate release to Pretrial." Cook also testified that McFerren did not go over his acknowledgement of rights and entry of plea form because she brought it with his plea agreement and he was ready to sign both.

Cook testified that he was not satisfied with McFerren because they "bumped heads the whole time" and he "felt like she was against me." Cook also added that he believed it was important that the court know "[t]hat the State I just . . . they're now trying to exploit my errors by reneging on their own plea agreement pursuant to the escape clause . . . which I had no understanding of when I signed the plea in the first place."

He later said that he intentionally failed to report to pretrial services because he did not want to go back to jail on a child support warrant he claimed to have. He also said that he did not go to his sentencing because he knew missing his pretrial services "was gonna get [him] thrown in jail." On cross-examination, Cook testified that he understood the benefit of the plea bargain and understood the unique terms of the plea agreement, including domestic violence tags and potential restitution.

The State asked Cook why he felt he was under duress to take the plea agreement, and Cook testified that he felt scared because McFerren told him he would lose at trial. Cook stated, "I'm under duress 'cause I'm scared that I'm gonna—am gonna lose at trial." Cook also testified that he was "willing to say whatever it takes" to get probation and out of custody.

McFerren described the process she used with Cook to explain the charges, evidence, and his criminal history. She testified that Cook told her he wanted a plea but if there was not an offer of probation, he would go to trial.

5

McFerren testified that after she obtained an acceptable plea agreement, she went over the acknowledgement of rights and plea agreement with Cook. McFerren testified that she did not remember Cook telling her she did not need to go over the agreement. McFerren denied telling Cook to lie to the court, denied that he told her he was innocent, and stated that he had no reservations about taking the plea deal.

McFerren also testified about her general practice with clients about bond. It is her common practice to ask the prosecutor for a bond reduction, or anything similar, after the parties reach a plea agreement. McFerren followed this practice with Cook, and she said she offered Cook no promises about bond in exchange for his plea.

*The district court made some important findings in denying Cook's motion.*

The court held that Cook was represented by competent counsel, and he was not misled, coerced, mistreated, or unfairly taken advantage of. In support of this finding, the court made factual findings that McFerren negotiated a favorable plea agreement, which Cook specifically requested. That agreement recommended probation and would not seek imposition of the special felony rule. The court also found that McFerren read the plea agreement and the acknowledgement of rights to Cook before he entered his guilty plea. The judge found that Cook was aware of his rights, and his plea was fairly and understandably made.

The court also found that Cook's guilty plea was not conditioned upon his bond being modified. The court noted that after Cook was released from jail, he violated the conditions of his release which caused him to be arrested again. The court found that Cook's testimony was not credible when he claimed that he did not understand he had a right to a jury trial or a right to face his accusers. The court found McFerren's testimony on this issue to be credible.

6

Cook makes an awkward argument to us. Even though his attorney negotiated a plea agreement that he wanted, he claims he was coerced by counsel to plead guilty to a crime he says he did not commit because he received a favorable plea agreement. In other words, he was coerced because he got what he wanted.

In his brief, Cook adds that he "felt forced to choose between sticking with his attorney—who he believed was effectively coercing him to take 'a favorable plea agreement'—and the 'favorable plea agreement' itself. This is not a voluntary choice." He tries to explain this reasoning by citing to his testimony that he told McFerren he was innocent, but she had only told him that he would lose at trial, which he claimed was "kind of scary." In other words, McFerren's assertion that he would lose at trial, combined with his awareness of the State's ability to seek prison and a high criminal history score, coerced him into taking the plea because he felt like he had to eliminate the variables, such as the risk of trial.

We remain unconvinced. The record reflects that Cook told McFerren that he specifically wanted a plea that offered probation; otherwise, he would go to trial. McFerren testified that Cook never told her he would not take the plea agreement because he was innocent. She further testified that she discussed trial and defense strategy with Cook "but he kept saying he wanted to plea to probation, so we didn't talk much about it, just briefly through . . . our meetings."

The district court weighed Cook's and McFerren's evidence and credibility and found that the evidence weighed in favor of Cook's plea being voluntary because he had not been misled or coerced. The record shows that McFerren did exactly what Cook asked of her when she negotiated this plea agreement and she did not coerce or mislead him into agreeing to it. In fact, Cook's own testimony shows that he was more than willing to agree to the plea when he stated,

7

"Whenever [McFerren] came to me with the plea, she told me it's the one I wanted, I didn't ask no questions or nothing. Whenever she went to go over it I told her, Don't even have to go over it. Where do I sign? I was ready to accept it no matter what the—no matter what it would have said. It was irrelevant to me 'cause I knew that I was getting out that day."

Thus, the district court did not abuse its discretion when it found that McFerren negotiated a favorable plea agreement in which the State would recommend probation, and Cook's attorney did not mislead or coerce him into entering a guilty plea.

We turn now to whether Cook understood his plea. Cook argues that he did not understand that the State would not be bound by the plea agreement if he violated the agreement before sentencing. He presents no additional evidence not already considered by the district court on this point. He does argue that the district court did not advise him that the State will not be bound by the plea agreement if he failed to appear.

The court went over a comprehensive list of subjects with Cook before he entered his guilty plea. These included:

- Cook's right to a jury trial;
- his presumed innocence;
- the State's burden to prove him guilty beyond a reasonable doubt;
- his right to a speedy trial;
- his right to present evidence at trial;
- his right to testify;
- his right to confront the State's witnesses; and
- his right to appeal.

The district court also acknowledged that it specifically asked Cook twice if he had any questions, and Cook did not.

Cook's argument suggests that because the district court did not advise him that the State is not bound by the plea agreement if he violated its conditions, then he could not have understandably made the plea agreement. Despite having read the agreement, unless the court told him of that provision the court could not find that he understood the agreement. Indeed, the court did not address this specifically at Cook's plea hearing. The court, however, made a factual finding that Cook was nevertheless advised of this provision. Substantial competent evidence supports the district court's finding that he was advised of this provision when McFerren testified that she went through and explained the plea agreement with Cook.

Cook also tries to spin his testimony when he says he told McFerren that she did not need to go over the plea agreement with him and asked her, "[w]here do I sign? I was ready to accept it no matter what." Cook unpersuasively argues that by stating this, he was not testifying that he knowingly and understandably entered into the plea agreement. Instead, it means he "'accepted it no matter what' because he believed that was the only thing he could do."

This argument is simply not persuasive. McFerren testified that Cook had rejected a previous plea agreement offer and they had discussed trial strategy and defense. Cook admitted that he rejected "a couple different plea agreements" before McFerren negotiated an acceptable one. Thus, the record shows that Cook did know he had other options when he entered his pleas, and his plea was fairly and understandably made.

We find no error of law or fact here. Reasonable people could agree with the district court's finding that Cook did not show good cause for withdrawing his pleas

9

before sentencing. Thus, the court did not abuse its discretion when it denied Cook's motion to withdraw his pleas.

*We turn to the third case consolidated for appeal.*

The special sentencing rule did not apply here. In the third case, 17 CR 1772, the State charged Cook with trafficking in contraband in a correctional institution after Cook had someone sneak tobacco products into the jail. Cook pled guilty to an amended charge of attempted trafficking in contraband. The court imposed a consecutive sentence for that third case. We note that the district court also sentenced Cook in another case, 17 CR 1922, which is the subject of another appeal with this court. It was mentioned by the district court at Cook's sentencing, but it is not pertinent to this appeal.

To us, Cook correctly claims the special sentencing rule in K.S.A. 2016 Supp. 21-6604(f)(1) and K.S.A. 2016 Supp. 21-6606(e)(1) does not apply to this case because he was not serving a sentence for a felony when he was incarcerated. In opposition, the State argues that Cook did not preserve this issue for appeal, did not affirmatively designate a record to show prejudicial error, and is requesting an improper form of relief.

Cook concedes that he did not make this argument at his sentencing but believes we should consider the matter because there is no dispute about the facts relevant to this issue, and the newly asserted theory is a question of law. The State disagrees and argues that this issue is not only a question of law, but also a factual issue because it is not clear from the record what statute the district court relied on when ordering consecutive sentences. We are not convinced by the State. The record of the sentencing hearing, the presentence investigation reports, and the journal entry of sentencing provide us with enough facts to rule on this question.

At the sentencing hearing, the district court reviewed Cook's criminal history for all of his cases. The court then sentenced Cook in each case, addressing each case individually and imposed a sentence specific to each offense. When the court addressed whether the sentences would be consecutive or concurrent with each other, it held:

"In regard to all four of these—well, in regard to that sentence of the consolidated 16 CR cases relative to the two 17 CR cases, I am going to run them consecutive to each other. . . . 17 CR 1772 is consecutive to the two 16 CR cases and then 17 CR 1922 is consecutive to the 17 CR 1772 cases and both 16 CR cases. . . .

"There are special rules as stated in the PSIs. I think I've identified those. I believe in each one of these cases, including the consolidated 16 CR cases, there is a special rule that states the imposition of consecutive treatment of the cases. So I am following that special rule. I am also applying the special rule that affects the presumption in 17 CR 1922."

The court then addressed Cook's motion for a durational or dispositional departure and held,

"I am going to deny those motions. I am following the presumption in 17 CR 1772. I'm following the presumption in 17 CR 1922 that is both rule ten and rule 26, which is a subsequent felony drug possession. I'm also applying the special rule in the two 16 CR cases. I'm finding that there are no special and compelling factors or basis to depart.

"I believe that finding is required in the two 17 CR cases. But as [Cook's attorney] has argued the same factors, to the degree it would apply, I am making a finding there's no basis to depart in the two 16 CR cases. I'm following the legislative directive in the two 17 CR cases and the special rule in the two 16 CR cases."

The district court found that a "special rule" applies to each case at sentencing and stated that the special rules are stated in the PSI reports. The PSI report for 17 CR 1772

11

states that special rule nine applies. The district court also said that it was following the "presumption," that it believed the finding for 17 CR 1772 was "required," and that it was "following the legislative directive in the two 17 CR cases and the special rule in the two 16 CR cases."

The journal entry for sentencing in 17 CR 1772 distinctly marks that a "special rule" applies and that special rule includes when a crime is committed while incarcerated, on probation, parole, conditional release, or postrelease supervision for a felony.

The court sentenced Cook on the same day for all three cases—16 CR 15, 16 CR 492, and 17 CR 1772. This means that Cook could not have been serving a felony sentence for the charges in 16 CR 15 and 16 CR 492 when he committed his new crime in 17 CR 1772 because sentences for the two 2016 cases had not yet been imposed.

When we look at the cases that have dealt with this subject, we are convinced that Cook's sentence for 17 CR 1772 must be vacated. Two cases are persuasive on this point. The Supreme Court has considered a similar issue under K.S.A. 1996 Supp. 21-4603d(a), the predecessor statute to K.S.A. 2016 Supp. 21-6604(f)(1). That court found the critical provision of this statute is that it applies when a new felony is committed while the offender is incarcerated and serving a sentence for a felony. *State v. Marsh*, 263 Kan. 773, 775, 952 P.3d 933 (1998). This court then addressed a nearly identical situation as on appeal  here, and held that when a defendant has been convicted of a felony and incarcerated, but not serving a felony sentence, then the district court is not required to order consecutive sentences under the predecessor statute to K.S.A. 2016 Supp. 21-6606(e)(1). *State v. Bailey*, No. 110,583, 2014 WL 4388578, at *3 (Kan. App. 2014) (unpublished opinion).

We find that Cook was not serving a felony sentence when he committed the felony in 17 CR 1772. A sentence imposed under the mistaken belief that consecutive

12

sentences are mandatory must be vacated and remanded for resentencing. See *State v. Christensen*, 23 Kan. App. 2d 910, 915, 937 P.2d 1239 (1997), *disapproved of on other grounds in State v. Bolin*, 266 Kan. 18, 968 P.2d 1104 (1998); *State v. LaGrange*, 21 Kan. App. 2d 477, 484-85, 901 P.2d 44 (1995).

We vacate Cook's consecutive sentence in 17 CR 1772 because the special sentencing rule cited by the court did not apply. We remand for resentencing.

We affirm the district court's denial of Cook's motions to withdraw his pleas in 16 CR 15 and 16 CR 492.

Affirmed in part, sentence vacated in part, and remanded with directions consistent with this opinion.